# FOR PUBLICATION



**FILED**

Apr 29 2014, 9:41 am

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**KENDRA G. GJERDINGEN**
Mallor Grodner LLP
Bloomington, Indiana

ATTORNEYS FOR APPELLEE:

**DARRYN L. DUCHON**
Indianapolis, Indiana

**MONTY K. WOOLSEY**
Cross, Pennamped, Woolsey & Glazier, P.C.
Carmel, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

|  |  |  |
|---|---|---|
| D.D., | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1311-DR-1004 |
| | ) | |
| D.P., | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Theodore M. Sosin, Judge
Cause Nos. 49D02-0310-DR-1827 and 32D01-0911-AD-37

**April 29, 2014**

**OPINION – FOR PUBLICATION**

**BAKER, Judge**

In this case, the parties are before this Court for the third time concerning essentially the same stepparent adoption proceedings. Appellant-petitioner D.D. (Stepfather) married K.D. (Mother) in 2007 and wanted to adopt her two children from a previous marriage. However, the children's father, appellee-respondent D.P. (Father), resides in Washington D.C., and Mother could not convince him to consent to the adoption. Nevertheless, Stepfather's petition for adoption was granted in 2010 but was vacated for lack of notice to Father.

Another hearing on the adoption petition was scheduled and Stepfather alleged that Father's consent was unnecessary because he had failed to significantly communicate with the children for a period of at least one year when able to do so. The trial court found that Stepfather had not met his burden, but a panel of this Court remanded after clarifying the correct burden of proof. After reviewing the evidence again and applying the correct burden of proof, the trial court entered findings of fact and conclusions of law in its order denying Stepfather's petition to adopt the children. Perhaps the trial court's most compelling finding was that Mother had thwarted Father's attempts at communicating with the children.

Stepfather now appeals, arguing that the trial court's finding that Mother thwarted Father's attempts at communication are clearly erroneous, insofar as Father never tried to directly communicate with the children. Concluding that the trial court did not err by denying Stepfather's petition to adopt the children, we affirm the judgment of the trial court.

2

In 2004, Mother and Father had their marriage dissolved by the Marion Superior Court, and Mother was awarded sole legal and physical custody of their two children, JJP and JP, who were twenty-three months and four months old at the time. Father was awarded parenting time with no overnight visits and was ordered to pay $502 per week in child support, which he has consistently paid except for a short period when he was seeking employment.

Father saw JJP and JP a few times during the pendency of the dissolution proceedings. In 2004, after the dissolution was granted, Father moved to Washington, D.C. for work and currently resides in Arlington, Virginia. Father's last visitation with the children was in 2004 before the trial court enforced parenting time in 2010.

In 2007, Mother married Stepfather, and they currently reside with the children in Hendricks County. Father is also remarried and has three older children from a previous marriage.

Following the dissolution and Father's relocation, he made numerous efforts to establish parenting time in a manner that would be the least disruptive to the children. More particularly, Father repeatedly emailed and telephoned Mother, attempting to establish a parenting time schedule that would be agreeable to both of them. Father sent Mother over sixty emails requesting parenting time, of which Mother responded to five.

Father continued to struggle with his concerns over his children's well-being, wanting to be a part of their lives, and the effect that coming back into their lives would

have on them.  Rather than initiating litigation, Father continued to pursue his goal of gaining Mother's cooperation in establishing a parenting time schedule.

However, Mother did not want Father in the children's lives, refused to address most of his communications, and led Father to believe that she thought that it would be traumatic for the children if Father had parenting time with them.  From the time that the dissolution decree was granted, Mother's position was that she wanted Father out of her and the children's lives and quickly expressed her approval and cooperation in terminating Father's parental rights, acknowledging that she could not pursue such action on her own.  After Mother remarried, this evolved into requests that Father consent to Stepfather's adoption of their children.

On November 10, 2009, Stepfather filed a petition for adoption in the Hendricks Superior Court.  The petition was not served on Father, and no summons was issued.  A hearing on the adoption was held without any notice to Father, and a decree of adoption was entered on January 11, 2010, without Father's knowledge or consent.

On January 15, 2010, Mother moved to terminate the child support withholding order against Father's income, which was granted on January 21.  On January 27, 2010, Father moved to vacate the adoption in the Hendricks Superior Court, and on February 3, 2010, Father filed an objection to Mother's motion to terminate the child support withholding order and moved to establish parenting time with the children in the Marion Superior Court.

4

On March 15, 2010, the Hendricks Superior Court vacated the adoption decree for lack of proper service on Father. However, Stepfather's adoption petition was still pending and set for a contested adoption hearing before the Hendricks Superior Court.

On March 23, 2010, Father filed a notice of vacation of adoption in the Marion Superior Court. Father requested that the Hendricks Superior Court proceeding be dismissed or consolidated with the Marion Superior Court proceeding. The Hendricks Superior Court took Father's motion under advisement and stayed the case pending receipt of the Marion Superior Court Order. The Marion Superior Court issued an order on July 16, 2010, concluding that it had jurisdiction over the adoption proceeding, that Mother had failed to establish that Father's consent was not required, and ordered Mother to provide Father with access to his children in response to his motion to enforce parenting time.

Mother appealed a part of the Marion Superior Court's decision. Specifically, Mother appealed its determination that it had jurisdiction over the adoption proceeding and that she had failed to establish that Father's consent to the adoption was not required. Devlin v. Peyton, 946 N.E.2d 605 (Ind. Ct. App. 2011). In Peyton, a panel of this Court held that the Marion Superior Court did not have jurisdiction over the adoption proceeding because Stepfather's adoption petition was still pending in the Hendricks Superior Court. Id. at 607. The panel reversed only the adoption portion of the ruling. Id. at 608.

5

Father then filed a motion to dismiss or transfer with the Hendricks Superior Court, which granted the request, and the Marion Superior Court accepted transfer. On August 8, 2012, the Marion Superior Court (trial court), issued an order which addressed Father's attempts to enforce his parenting time, set a hearing on the necessity of Father's consent to the adoption, and set a hearing on the final adoption to determine the children's best interests as they related to Stepfather's adoption request.

The trial court held a hearing on the consent issue and ruled on October 5, 2012, that Father's consent to the adoption was required. Stepfather appealed, and a different panel of this Court remanded, directing the trial court to reconsider the evidence but noted that a new hearing was not required. D.D. v. D.P., No. 49A02-1211-DR-896, memo op. at 4 n.1 (Ind. Ct. App. June 27, 2013). In this opinion, the panel held that the trial court had used an incorrect standard when determining whether Stepfather had satisfied his burden to prove that Father's consent to the adoption is not required. Id. at 2. Specifically, instead of using the "clear and convincing" standard, the trial court had used the "clear, cogent and indubitable" standard. Id. at 1.

After reconsidering extensive evidence, on November 1, 2013, the trial court issued an order on remand that Father's consent to Stepfather's adoption was required. Specifically, under the clear and convincing standard, the trial court concluded that Stepfather had not proven that Father failed to communicate with the children for more than one year without justifiable cause. Stepfather now appeals.

6

DISCUSSION AND DECISION

Stepfather argues that the trial court erred in finding that he had not proved by clear and convincing evidence that Father's consent was unnecessary for him to adopt the children. More particularly, Stepfather maintains that Father failed to communicate with the children for more than five years even though he was able to do so.

## I. Standard of Review

Where, as here, a trial court enters findings of fact and conclusions of law, this Court first determines whether the evidence supports the findings. In re Adoption of T.L., No. 02S03-1308-AD-528, slip op. 4 (Ind. March 11, 2014). Then, the Court determines whether the findings support the judgment. Id. The trial court's findings of fact and conclusions of law will be set aside only if they are clearly erroneous, or, in other words, the record contains no facts or inferences to support them. Id. The trial court's judgment is clearly erroneous when "'it is unsupported by the findings of fact and the conclusions of law relying on those findings.'" Id. (quoting In re Adoption of T.W., 859 N.E.2d 1215, 1217 (Ind. Ct. App. 2006)).

## II. Father's Consent to Adoption

Stepfather contends that the trial court erred, inasmuch as he proved by clear and convincing evidence that Father's consent to adopt the children was not necessary because Father had failed to communicate with the children for five years, four more than the statutory minimum. Thus, according to Stepfather, the trial court's finding that "[a]t best, Mother ignored/hampered Father's inquiries regarding a mutually acceptable plan

for visitation/communication, and at worst, thwarted Father's attempts at arranging visitation/communication with the children," appellant's app. p. 29, is erroneous.

Generally, "a petition to adopt a child who is less than eighteen (18) years of age may be granted only if written consent to adoption has been executed by . . . [e]ach living parent of a child born in wedlock . . . ." Ind. Code § 31-19-9-1. However, consent is not required if "[a] parent of a child in the custody of another person [] for a period of at least one (1) year . . . fails without <u>justifiable cause</u> to communicate significantly with the child when able to do so[.]" I.C. § 31-19-9-8(a)(2)(A) (emphasis added). If an adoption petition alleges that parent's consent is unnecessary under Indiana Code section 31-19-9-8(a)(2) and that parent files a motion to contest, "a petitioner for adoption has the burden of proving that the parent's consent to the adoption is unnecessary" by clear and convincing evidence. I.C. § 31-19-10-1.2.; <u>In re Adoption of S.W.</u>, 979 N.E.2d 633, 640 (Ind. Ct. App. 2012).

Here, both children were less than two years old when Mother and Father dissolved their marriage. Pet. Ex. 4. Following the dissolution, Father moved to Washington, D.C. for work and experienced financial difficulties. Pet. Ex. 5 p. 1; Tr. p. 52. In December 23, 2004, Father emailed Mother seeking her cooperation in establishing a parenting time schedule. Pet. Ex. 5 p. 1-2. However, even in early 2005, Mother was uncooperative in responding to Father's emails. <u>Id.</u> at 4. And these were not the only emails that Father sent to Mother attempting to discuss with her the best way in

which he could be integrated into the children's lives. Indeed, as noted above, Mother responded to only five of Father's sixty emails that he sent to her. Tr. p. 53-54.

When Mother did respond to Father's emails, she seemed interested only in terminating his parental rights or, after she married Stepfather, convincing Father that it was in the children's best interests for Stepfather to adopt them. Pet. Ex. 3, 5.

At the October 5, 2012 hearing on the adoption petition, Father testified about his goals regarding the children and his communications with Mother to achieve them:

> I would communicate with [Mother] and trying to figure out what can I do to become part of these kids' lives? What can I do- how am I going to get involved? How are we going to integrate me? I had to move to Washington D.C. for work, and how do we navigate through this . . . and be a good parent. How do I get introduced to them as a good parent, and that was what I was trying to work through, and when you ask what I was trying to do, I was trying to understand how am I going to do this and what can I do to do the right thing about it. [Mother], on the other hand, would respond, I want you to, and I'm paraphrasing . . . I want you to let me adopt them, and I've always been pessimistic when she would say that, like, why is that in the best interests, was always my response.

Tr. p. 52-53.

Under these facts and circumstances, we cannot say that the trial court erred by finding that "Mother hampered and thwarted Father's attempts to communicate with the children." Appellant's App. p. 29. Here, the trial court did not permit Mother's interference with Father's efforts to be a part of his children's lives to operate to Stepfather's benefit when determining whether Father's consent was unnecessary. To do so would have had the effect of rewarding Mother's refusal to work with Father concerning his contact with the children.

Notwithstanding this conclusion, Stepfather places great emphasis on the lack of direct communication between Father and the children. As stated above, the trial court did not err in concluding that Mother thwarted Father's attempts to communicate with the children. However, assuming solely for argument's sake that Father was required to attempt to directly communicate with the children, we note that Father's emails to Mother indicate that he tried to work with Mother to devise a plan to re-establish contact between himself and the children. Mother rarely responded to Father's emails or attempt to cooperate with Father to re-establish contact with the children. Tr. p. 53-54.

In light of these facts, Father sought to establish contact in a manner that would gain Mother's approval and minimize any negative impact on the children, who were very young when Mother and Father dissolved their marriage. We would think that under these circumstances, Mother, or any parent, would prefer that Father contact her regarding communications to determine how to proceed in the best interests of the children. Accordingly, under these circumstances, Father demonstrated justifiable cause for not initiating direct communication with the children.

The judgment of the trial court is affirmed.

BARNES, J., and CRONE, J., concur.