Bradford, Judge,
dissenting.
Because I do not believe that the trial court erred in deciding the instant matter, I must dissent.
Where, as here, a trial court enters findings of fact and conclusions of law, this Court first determines whether the evidence supports the findings. In re Adoption of T.L., 4 N.E.3d 658, 662 (Ind. 2014). Then, the Court determines whether the findings support the judgment. Id. The trial court’s findings of fact and conclusions of law will be set aside only if they are clearly erroneous, or, in other words, the record contains no facts or inferences to support them. Id. The trial court’s judgment is clearly erroneous when “ ‘it is unsupported by the findings of fact and the conclusions of law relying on those findings.’” Id. (quoting In re Adoption of T.W., 859 N.E.2d 1215, 1217 (Ind. Ct. App. 2006)).
D.D. v. D.P., 8 N.E.3d 217, 220 (Ind. Ct. App. 2014). Specifically, based on my review of the record, I do not believe that the trial court erred in (1) imputing income to Mother, (2) excluding the parties’ bonuses from the calculation of the parties’ weekly income, or (3) ordering that Mother to pay half of the eldest child’s college expenses.
A. Deference to the Trial Court in Family Law Cases
It is undisputed that in family law matters, appellate courts grant deference to the trial court. See generally, In re Marriage of Richardson, 622 N.E.2d 178, 178 (Ind. 1993) (expressing a preference “for granting latitude and deference to our trial judges in family law matters”). In explaining the rationale for this deference, the Indiana Supreme Court has stated the following:
Appellate deference to the determinations of our trial court judges, especially in domestic relations matters, is warranted because of their unique, direct interactions with the parties face-to-face, often over an extended period of time. Thus enabled to assess credibility and character through both factual testimony and intuitive discernment, our trial judges are in a superior position to ascertain information and apply common *566 sense, particularly in the determination of the best interests of the involved children.
Best v. Best, 941 N.E.2d 499, 502 (Ind. 2011).
B. Imputing Income to Mother
Indiana Child Support Guideline 3(A)(3) provides that “[i]f a court finds a parent is voluntarily ... underemployed without just cause,” it may impute potential income to the parent. “A determination of potential income shall be made by determining employment potential and probable earnings level based on the obligor’s work history, occupational qualifications, prevailing job opportunities, and earnings levels in the community.” Ind. Child Support Guideline 3(A)(3). Comment (c)(2) to this Guideline provides that
When a parent has some history of working and is capable of entering the work force, but without just cause voluntarily fails or refuses to work or to be employed in a capacity in keeping with his or her capabilities, such a parent’s potential income shall be included in the gross income of that parent. The amount to be attributed as potential income in such a case may be the amount that the evidence demonstrates he or she was capable of earning in the past.... Discretion must be exercised on an individual case basis to determine whether under the circumstances there is just cause to attribute potential income to a particular unemployed or underemployed parent.
(Emphasis added).
Review of the record reveals that the trial, court heard evidence indicating that Mother, a licensed nurse practitioner, has the ability to work full-time but simply chooses not to, numerous opportunities are available in Mother’s line of work within the community, and Mother would make the same hourly rate ($50 per hour) or higher if she were to accept a full-time position. In addition, while Mother claims that she does not work full time because her “passion” is to be a mother, the parties’ oldest child is away at college and their youngest child is thirteen. Also, Mother and Father split joint and physical custody of the youngest child “50/50” so the youngest child is only in Mother’s care every other week. In light of these facts coupled with the high level of deference we grant the trial court in family law matters, I would conclude that the trial court did not abuse its discretion in finding that Mother is voluntarily underemployed and in imputing income to Mother.
C. Exclusion of the Parties’ Bonuses
Comment b to Indiana Child Support Guideline 3(A)(1) provides that bonuses are “includable in the total income approach taken by the Guidelines, but each is also very fact sensitive.” Comment b goes on to provide that “[w]hen the court determines that it is not appropriate to include irregular income in the determination of the child support obligation, the court should express its reasons.” Ind. Child Support Guideline 3(A)(1) cmt. b. We have previously observed that applicable case law supports the idea that exclusion of bonuses “should be based on dependability.” Thompson v. Thompson, 696 N.e.2d 80, 84 (Ind. Ct. App. 1998). In making this observation, we noted that “[t]he thrust of the commentary and related cases is that the trial court’s discretion in excluding overtime and bonus income is grounded in a determination that the income is not dependable or would place a hardship on a parent to maintain.” Id. We also reiterated that in addition to articulating its reasons for excluding bonuses from a calculation of a party’s income, the trial court’s reasoning “must indicate that the determination *567 was made” in light of the dependability of such compensation. Id.
In this case, the trial court excluded any bonuses received by the parties from the determination of the parties’ income. The trial court noted that Father’s “first bonus with [his] employer was in the sum of One Thousand Three Hundred Dollars ($1,300.00) and will vary from time to time. Mother also receives bonuses from time to time.” Appellant’s App. Vol. II, p. 34. For instance, Mother’s pay stubs for the latter part of 2015 indicate that Mother had received quarterly bonuses totaling $1,998.25. Appellant's App. Vol. II, pp. 137-42. In excluding the parties’ bonuses from the calculation of their income, the trial court found that while both parties receive occasional bonuses, the amount of said bonuses “are uncertain and not predictable.” Appellant’s App. Vol. II, p. 34. The trial court’s determination is supported by the record as the court heard evidence that while Father has the potential to earn up to $27,000.00 per year in bonuses, such bonuses are solely dependent upon sales which are undoubtedly impacted by the economy. In fact, in the four months preceding the evidentiary hearing, Father had earned only $1,300.00, which is far less than one-third of the maximum which Father could potentially earn during any given year. Again, in light of these facts coupled with the high level of deference we grant the trial court in family law matters, I would conclude that the trial court did not abuse its discretion in excluding the parties’ bonuses from the calculation of the parties’ income.
D. Derric’s College Expenses
Indiana Child Support Guideline 8(b) provides that
The authority of the court to award post-secondary educational expenses is derived from [Indiana Code section] 31-16-6-2. It is discretionary with the court to award post-secondary educational expenses and in what amount. In making such a decision, the court should consider post-secondary education to be a group effort, and weigh the ability of each parent to contribute to payment of the expense, as well as the ability of the student to pay a portion of the expense.
When determining whether or not to award post-secondary educational expenses, the court should consider each parent’s income, earning ability, financial assets and liabilities. Ind. Child Support Guideline 8(b).
If the court determines that an award of post-secondary educational expenses is appropriate, it should apportion the expenses between the parents and the child, taking into consideration the incomes and overall financial condition of the parents and the child, education gifts, education trust funds, and any other education savings program. The court should also take into consideration scholarships, grants, student loans, summer and school year employment and other cost-reducing programs available to the student. These latter sources of assistance should be credited to the child’s share of the educational expense unless the court determines that it should credit a portion of any scholarships, grants and loans to either or both parents’ share(s) of the education expense.

Id.

Review of the record reveals that in ordering the parties to pay equal shares of Derric’s college expenses, the trial court considered Derric’s aptitude and scholarships received together with the parties’ financial situations. The cost of Derric’s attendance at Purdue University is approximately $23,828.00 per year. The trial court found that Derric had received a Navy ROTC scholarship in the amount of $10,002.00 per year. Thus, the trial court *568 determined that Derrie’s scholarship covered his portion of his college expenses.
The trial court also found that both Father and Mother were capable of contributing to Derric’s education. Specifically, the trial court found that in light of the incomes applied by the trial court in determining child support, including the income imputed to Mother, the parties “shall have an equal share of income for purposes of this educational support order.” Appellant’s App. Vol. II, p. 37. In reaching this finding, the trial court again noted that Mother has an advanced degree and is capable of making an income substantially more than in her current part-time employment. (Appellant’s App. Vol. II, p. 37) The trial court also noted that the parties managed their debts and assets in such a manner in order to have the disposable income and resources available to assist Derric with his postsecondary education. (Appellant’s App. Vol. II, p. 37)
In Pickett, the trial court ordered the parties to pay an equal portion of their daughter’s college expenses which remained after the daughter’s scholarships and grants had been applied. 44 N.E.3d at 765. In doing so, the trial court determined that the Appellant was voluntarily underemployed and imputed income to him. Id. at 765-66. On appeal, we concluded that the trial court did not abuse its discretion in finding that Appellant was voluntarily underemployed, in imputing income to him, or in ordering him to pay half of the remaining balance of his daughter’s college expenses. Id. at 767.
Similarly, in the instant matter, the trial court heard evidence about the parties’ financial situations and earning capabilities. The trial court found that Mother was voluntarily unemployed and was capable of earning an income that was significantly higher than what she was currently earning.. The trial court also determined that given the way the parties had managed'their finances during the marriage, the parties did not have any significant debt that would impair their ability to pay a portion of Derric’s remaining college expenses. These determinations were supported by the evidence presented to the trial court during the evidentiary hearing. As such, I again would conclude that, in light of these facts coupled with the high level of deference we grant the trial court in family law matters, the trial court did not abuse its discretion in ordering the parties’ to pay an equal portion of Derric’s remaining college expenses.
E. Conclusion
Given that I would find that the trial court’s challenged findings and conclusions are not clearly erroneous, I would vote to affirm the judgment of the trial court.