Ricky L. RUST, Appellant–Respondent,

v.

**Robert and Ruth LAWSON,
Appellees–Petitioners.**

**No. 34A02–9901–CV–54.**

Court of Appeals of Indiana.

Aug. 10, 1999.

---

Brent R. Dechert, Kokomo, Indiana, Attorney for Appellant.

Mark A. Dabrowski, Dabrowski & Huston, Kokomo, Indiana, Attorney for Appellees.

## OPINION

RILEY, Judge

### STATEMENT OF THE CASE

Appellant–Respondent Ricky L. Rust (Rust) appeals the adoption of his son, K.R., by Robert and Ruth Lawson, arguing that the trial court erred in finding that he failed to communicate significantly with K.R. for a period of at least one year under Ind.Code § 31–19–9–8(a)(2)(A), and therefore granting the adoption without Rust's consent.

We affirm.

## ISSUES

Rust raises three issues for our review which we consolidate and restate as two:

1. Whether the trial court erred in determining that Rust failed to significantly communicate with K.R. for a period of at least one year without justifiable cause under the statute, resulting in the granting of the adoption without the requirement of Rust's consent.[1]

2. Whether Rust was denied due process of law because his former counsel prepared and submitted proposed findings of fact on behalf of the Lawsons in the case at bar.

## FACTS AND PROCEDURAL HISTORY

K.R. was born on February 10, 1995, to the marriage of Valery Rust (Valery) and Ricky Rust. At the time of K.R.'s birth, both Valery and Rust were incarcerated. K.R. was born at Wishard Memorial Hospital in Indianapolis. Following K.R.'s birth and with Valery's approval, the Lawsons took K.R. home with them.

On February 24, 1995, the Lawsons filed their Petition for the Appointment of a Guardian for K.R. Attached to the Petition for the Appointment of Guardian was the consent of both Valery and Rust. The Howard Superior Court entered its order appointing the Lawsons as guardians.

In January, 1996, Rust filed a Petition for Dissolution of his marriage and also a Petition for custody asserting that he was the biological father of K.R. and was the best person to care for him.

On October 3, 1997, the Lawsons filed their Petition for Adoption of K.R. alleging that Rust had had no significant communication with K.R., and had not contributed to the support of K.R. for a period in excess of one year. Attached to the petition was Valery's consent to the adoption, however, Rust did not consent to the adoption. The hearing

on the Lawsons' Petition for Adoption was held on May 14, 1998.

On June 26, 1998, the Lawsons', by counsel Mark Dabrowski (Dabrowski), submitted their proposed findings of fact, conclusions of law and decree of adoption. On July 9, 1998, Rust, by counsel, submitted his proposed findings of fact and conclusions of law. On July 27, 1998, the Howard Circuit Court granted the Lawsons' Petition for Adoption and found the Lawsons to be the parents of K.R. Rust now appeals.

## DISCUSSION AND DECISION

■■■ Before considering the specific issues raised in this appeal, we deem it appropriate to comment upon the proper scope of appellate review in a case such as this. When reviewing the trial court's ruling in an adoption proceeding, we will not disturb that ruling unless the evidence leads to but one conclusion and the trial judge reached an opposite conclusion. *In re Adoption of Subzda,* 562 N.E.2d 745, 747 (Ind.Ct.App.1990). We will not reweigh the evidence, but instead will examine the evidence most favorable to the trial court's decision together with reasonable inferences drawn therefrom, to determine whether sufficient evidence exists to sustain the decision. *Matter of Adoption of Marcum,* 436 N.E.2d 102, 103 (Ind.Ct.App. 1982). We note that a petitioner for adoption without parental consent bears the burden of proving the statutory criteria for dispensing with such consent in Ind.Code § 31–19–9– 8(a)(2) by clear, cogent and indubitable evidence. *In re Adoption of Augustyniak,* 505 N.E.2d 868, 870 (Ind.Ct.App.1987); *Matter of Adoption of Ryan L.,* 435 N.E.2d 624, 625 (Ind.Ct.App.1982). If the evidence most favorable to the judgment clearly, cogently, and indubitably establishes one of the criteria for granting adoption without parental consent and, thereby, for the termination of parental rights without consent, we will affirm the judgment. *In re Adoption of Child-*

---

1. Rust also raises the issue of whether the trial court erred in determining that he knowingly failed to provide for the care and support of K.R. when he was able to do so as required by law or judicial decree. Because the uncontroverted evidence reveals that Rust knowingly failed to provide for the care and support of K.R. for at least

one year when he was able to do so, we refrain from addressing this issue. Furthermore, because under Ind.Code § 31–19–9–8(a)(2), parental consent is not required if only one of the two criteria is met, we have confined our discussion to the issue of significant communication.

*ers,* 441 N.E.2d 976, 978 (Ind.Ct.App.1982). Finally, the decision of the trial court is presumed to be correct, and it is the appellant's burden to overcome that presumption. *Id.*

## I. *Significant Communication*

The statute pertaining to adoption relating to dispensing with parental consent provides in pertinent part as follows:

(a) Consent to adoption is not required from any of the following:

(1) A parent or parents if the child is adjudged to have been abandoned or deserted for at least six (6) months immediately preceding the date of the filing of the petition for adoption.

(2) A parent of a child in the custody of another person if for a period of at least one (1) year the parent:

(A) fails without justifiable cause to communicate significantly with the child when able to do so; or

(B) knowingly fails to provide for the care and support of the child when able to do so as required by law or judicial decree.

\* \* \* \* \*

(b) If a parent has made only token efforts to support or to communicate with the child, the court may declare the child abandoned by the parent.

Ind.Code § 31–19–9–8. In its findings of fact, the court noted that Rust's consent for K.R.'s adoption was not required because:

The evidence presented to the Court establishes by clear, cogent and indubitable evidence, that Ricky Rust has failed without justifiable cause to communicate significantly with [K.R.] for a period of at least one (1) year. Ricky's failure to communicate with [K.R.] was due, not to any pattern of interference by the Lawsons, but rather, was due to Ricky's own failure to make even minimal efforts to act as a father would be expected to act towards his son.

(R. 68).

Rust argues that the Lawsons failed to prove by clear, cogent and indubitable evidence that he failed without justifiable cause to communicate significantly with K.R. for at least one year. Specifically, Rust asserts that the record clearly reflects that he did communicate with K.R. at least every year, however, Rust also argues that the record is silent as to whether many of his communications with K.R. were significant. Further, Rust argues in the alternative that if he did not communicate significantly with K.R. for at least one year, he had a justifiable cause for his failure because the Lawsons thwarted his ability to communicate with K.R.

■■■ One petitioning to adopt without parental consent has the burden of proving both a lack of communication for the statutory period and that the ability for communication during that time period existed. *Augustyniak,* 505 N.E.2d at 871. Whether this burden has been met is necessarily dependent upon the facts and circumstances of each particular case, including, for example, the custodial parent's willingness to permit visitation as well as the natural parent's financial and physical means to accomplish his obligations. *Id.* Efforts of a custodial parent to hamper or thwart communication between parent and child are relevant in determining the ability to communicate. *Lewis v. Roberts,* 495 N.E.2d 810, 812–13 (Ind.Ct.App. 1986). Furthermore, under the present statute, the communication standard has an additional factor. In order to preserve the consent requirement for adoption, the level of communication with the child must not only be significant, but it also must be more than "token efforts" on the part of the parent to communicate with the child. Ind.Code § 31–19–9–8(b). The reasonable intent of the statute is to encourage non-custodial parents to maintain communication with their children and to discourage non-custodial parents from visiting their children just often enough to thwart the adoptive parents' efforts to provide a settled environment for the children. *Rosell v. Dausman,* 175 Ind.App. 618, 373 N.E.2d 185, 188 (1978).

Here, the evidence most favorable to the trial court's decision reveals that Rust failed without justifiable cause to communicate significantly with K.R. when he was able to do so. Since K.R.'s birth, K.R. has lived with

the Lawsons' and K.R.'s half brother D.D. is the Lawsons' previously adopted child and the natural child of Valery Rust, but not of Ricky Rust. Rust was released from the Lake County jail on August 11, 1995. On August 13, 1995, Rust came to the Lawsons' home and was there for approximately two hours, spending the majority of his time with D. From August 14, 1995 until July 16, 1996, Rust had no contact with K.R. Nevertheless, on November 20, 1995, Rust made arrangements to meet with Ruth Lawson to visit with and give D. a birthday present. However, the uncontroverted evidence reveals that although he was not prevented from doing so, Rust never gave K.R. a birthday card, Christmas card, birthday present, or Christmas present. On July 16, 1996 Rust came to the Lawson home because he was concerned about Valery's release from jail. However, Rust did not visit with K.R. during his stay. On July 18, 1996 Rust again came to the Lawson home, but only for approximately fifteen minutes to pose for a picture with D. and K.R. Rust visited the Lawson home twice in early September 1996, once to eat strawberry cheesecake and again to speak with Valery and the Lawsons. Nevertheless, neither of these visits amounted to any substantial contact between Rust and K.R. According to both Rust and Ruth Lawson, Rust failed to visit with K.R. or even request to see his son from October, 1995, until July, 1997, a period of approximately twenty-two (22) months, when Rust explained by telephone that his lawyer told him to see K.R.

▮ Rust asserts that his efforts to visit K.R. were frustrated by his lack of funds and/or lack of counsel necessary to compel visitations with K.R. He contends that this constitutes a justifiable cause excusing his failure to communicate with K.R. However, the record reveals that Rust was represented by at least three attorneys since his release from the Lake County jail and he had access to and sought assistance from the Howard County Legal Aid Association which provides free legal representation to indigent clients. Furthermore, in the summer and fall of 1996, Rust worked for several months on a construction project and since April, 1997, Rust has been receiving monthly social security disability payments. Because this court has found that the consent statute does not contemplate "regular" communication, but rather one significant communication (provided that this single communication does not amount to a token effort to contact the child) in a year would have been sufficient, *Subzda*, 562 N.E.2d at 749, we find it hard to believe that Rust was incapable of even communicating once with K.R. for twenty-two months. Furthermore, Diane Adams, Rust's witness, testified that she had had conversations with Ruth Lawson in which Ruth evidenced her willingness to allow Rust to visit with K.R. Therefore, without reweighing the evidence we find that the record reveals clearly, cogently and indubitably that Rust failed without a justifiable cause to significantly communicate with K.R. for at least one year when he had the opportunity to do so. The trial court properly granted K.R.'s adoption without Rust's consent.

## II. *Conflict of Interest*

Next, Rust argues that he was denied due process of law because his former counsel, Mark Dabrowski (Dabrowski) prepared and submitted proposed findings of fact on behalf of the Lawsons in the present case. Specifically, Rust contends that there was a conflict of interest because Dabrowski prepared the Lawsons' findings of fact and conclusions of law and formerly represented Rust in a criminal case in which Rust was acquitted on all counts. Rust asserts that during his representation, Dabrowski was privy to confidential and privileged information and it was a conflict of interest under Rule 1.9 of the Rules of Professional Conduct for Dabrowski to then represent the Lawsons. We disagree.

Rule 1.9 of the Rules of Professional Conduct states:

A lawyer who has formerly represented a client in a matter shall not thereafter:

(a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation; or

**774**

(b) use information relating to the representation to the disadvantage of the former client....

Ind. Professional Conduct Rule 1.9. Further, the comment to the rule states in pertinent part that "the scope of a 'matter' for purposes of Rule 1.9(a) may depend on the fact of a particular situation or transaction.... The underlying question is whether the lawyer was so involved in the matter that the subsequent representation can be justly regarded as a changing of sides in the matter in question." Comment, Prof. Cond. R. 1.9.

Dabrowski previously represented Rust in a criminal case involving charges of aggravated battery, conspiracy to commit murder and conspiracy to commit criminal confinement. Rust was acquitted on all counts and Dabrowski has not represented him on any other matters. Therefore, it is our finding that Dabrowski's present representation encompassing preparation of proposed findings of fact and conclusions of law on behalf of the Lawsons in this adoption proceeding is not the same or substantially related to Dabrowski's representation of Rust in a criminal matter. Furthermore, we cannot equate Dabrowski's representation of Rust and subsequent representation of the Lawsons as a changing of sides in the present matter. We find no conflict of interest.

### CONCLUSION

The trial court properly determined that Rust failed to significantly communicate with K.R. for a period of at least one year without justifiable cause under the statute, resulting in the granting of the adoption without the requirement of Rust's consent. Rust was not denied due process of law when his former counsel prepared and submitted proposed findings of fact on behalf of the Lawsons in the case at bar because the present matter and Rust's former criminal matter are not the same or substantially related in order to find that Dabrowski changed sides.

Affirmed.

FRIEDLANDER and ROBB, JJ., concur.