## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 28 2016, 8:40 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Thomas C. Allen
Fort Wayne, Indiana

ATTORNEY FOR APPELLEE

Nicholas J. Hursh
Shambaugh, Kast, Beck &
Williams, LLP
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In re: The Adoption of:
K.A.M.


J.A.M,

*Appellant-Respondent,*

v.

P.E.U.,

*Appellee-Petitioner.*

November 28, 2016

Court of Appeals Case No.
02A04-1603-AD-631

Appeal from the Allen Superior
Court

The Honorable Charles F. Pratt,
Judge

Trial Court Cause No.
02D08-1405-AD-73

**Robb, Judge.**

# Case Summary and Issue

[1] J.M. ("Father") and L.U. ("Mother") share one child together, K.M. In 2012, Mother married P.U. ("Stepfather"). Two years later, Stepfather filed a verified petition to adopt K.M. Father objected and filed a motion to contest the adoption, which the trial court denied. Father appeals the trial court's order denying his petition to contest the adoption and raises one issue for our review, which we restate as whether there was sufficient evidence to support the trial court's finding that Father's consent to the adoption was not required. Concluding there is sufficient evidence to support the trial court's finding consent to the adoption was not required, we affirm.

# Facts and Procedural History

[2] K.M. was born in 2005 to Mother and Father. Following K.M.'s birth, Mother and Father lived together in Greencastle, Indiana, until July of 2006. Their relationship eventually ended, and for a short period, Mother moved to Fort Wayne to live with K.M.'s maternal grandfather. In December of 2006, Mother and Father rekindled their relationship for a brief period, but they separated again in March of 2007.

[3] Following their second separation, Mother moved out of Indiana. For about nine months following their separation, Mother lived in Grand Rapids, Michigan, with K.M.'s maternal grandmother; Father saw K.M. once during this period. Mother then moved to Camillus, New York, for nine months to

live with her sister. While she lived in New York, Mother established paternity for K.M. and was granted sole custody. Father drove to New York to visit K.M. on at least two occasions and would call sporadically to talk to Mother and K.M. on the phone.

[4] In 2008, Mother moved back to Fort Wayne. With Mother now living closer, Father had more opportunities to visit K.M. In 2008 and 2009, Mother and Father worked together and made arrangements for Father to visit K.M. on numerous occasions, with Mother driving K.M. to Indianapolis at least seven times. In addition, Father called Mother and K.M. a few times each month. In 2010, Mother began dating Stepfather and eventually moved in with him. Father visited K.M. a "handful of times, . . . maybe six . . . times" in 2010. Transcript at 17-18.

[5] In July of 2011,[1] Father visited K.M. for a few hours and they played laser tag together. A few months later, Father spoke with K.M. on the phone. Father has had no contact, in person or otherwise, with K.M. since 2011. Father asserts he has not communicated with K.M because Mother would not allow it. Father claims that since Mother moved in with Stepfather, her willingness to allow communication with K.M. has slowly diminished. For example, in 2011 Mother blocked Father's cell phone number from her phone, and blocked him

---

[1] Father's deposition states his last visit with K.M. was in January of 2011. However, at trial, both Father and Mother testified his last visit with K.M. was in July of 2011.

and his mother from contacting her via Facebook.[2]  Further, Father testified since Mother blocked him from her Facebook account, and his e-mail account is linked to his Facebook account, Mother's e-mail contact was subsequently blocked as well.  He also testified Mother refused to provide him with her address since she moved in with Stepfather, and she instructed him that if he ever wished to send a gift to K.M. he must send it to K.M.'s grandparent's house first.

[6]     In response, Mother testified she did not stop Father from contacting K.M., he just stopped making the effort and his already sporadic communication began occurring less frequently.  While she admitted she blocked Father from contacting her via her cell phone and Facebook account, she testified the cell phone block was temporary, only lasting for forty days in 2011.  Further, Mother testified Father called her cell phone in 2012 to congratulate her on her marriage to Stepfather.  The conversation lasted about an hour, and they talked about K.M. for about ten minutes.  Father admits they spoke in 2012, but testified the conversation took place over Mother's home telephone.

[7]     In October of 2012, Father drove to Fort Wayne and lived in a hotel for a month while seeking employment.  Father stated he intended to relocate to Fort Wayne to be closer to K.M.  However, because Father was unable to locate

_____

[2] Father testified Mother's cell phone block lasted until Stepfather filed his petition for adoption in May of 2014, and that he is still blocked from contacting Mother via Facebook.

K.M. or find employment, he returned to Indianapolis. Father admits that he had no contact with K.M. in 2012, 2013, or 2014.

[8] On May 29, 2014 Stepfather filed a verified petition to adopt K.M. Father subsequently filed a motion to contest the adoption, arguing he did not consent to the adoption. Stepfather countered that Father's consent was not required because Father lacked prior communication with K.M. for a period of more than one year. Following an evidentiary hearing on the matter, the trial court denied Father's motion to contest the adoption. The trial court issued findings of fact and conclusions, which read, in relevant part:

> [T]he Court finds that:
>
> * * *
>
> 15. Between 2010 and 2011, [Mother] maintained Facebook communication with [Father]. During their exchanges [Mother] encouraged [Father] to visit [K.M.]. Often plans could not be completed because [Father's] cell phone was turned off. From a review of [Stepfather's] Exhibit 2 the Court finds that [Mother] would become irritated with [Father]. They would argue, she would deny a visit, and, then, she would relent. This pattern followed until she blocked him on Facebook on or about June 2011.
>
> 16. [Father] was present for [K.M.'s] first day in kindergarten and knew that he was enrolled in Haverhill Elementary School. He claims that he was not able to enter the school and that the school officials did not have him listed as a contact.
>
> 17. [Father's] last personal visit with [K.M.] was on January 7, 2011. He had a few telephone contacts thereafter until September or October 2011 when [Mother] blocked him from calling her cell phone.

18. From [Mother's] deposition testimony the Court finds that [Mother] blocked [Father] from her cell phone because he called "over and over in the middle of the night[.]"

19. The parties dispute the length of time that [Father] was blocked from [Mother's] cell phone . . . . Another number was not blocked. [Mother] asserts that the block was for a period of forty (40) days. [Father] testified that the block continued until the date of the filing of the petition for adoption. [Father] acknowledges that he talked to [Mother] by cell phone in 2012. Thus, the evidence supports [Mother's] testimony.

20. Texting to [Mother's] cell phone and Facebook were the two primary means of communication between [Father] and [Mother].

21. Notwithstanding the block to [Mother's] cell phone and Facebook, [Father] was able to call [Mother] and [K.M.] through [Stepfather's] home phone, a land line that was also connected to a facsimile machine. [Father] telephoned [Mother] several times in 2012.

22. Shortly after her marriage to [Stepfather] (September 8, 2012), [Father] called [Mother] on her cell phone to congratulate her. They talked for about an hour. In his deposition testimony he estimated that only about ten-minute[s] of the conversation involved the child[.]

23. At or about the same time that she blocked the cell phone and Facebook communication [Mother] acknowledges that she discontinued her efforts to involve [Father] in [K.M.'s] life.

24. In October 2012 [Father] stayed in a hotel in Fort Wayne for a month. He sought temporary employment. He asserts that because he was not able to locate his son he returned to live in the Indianapolis area. However, [Father] knew the maternal grandfather's address and telephone number. He also knew, at that time, the location and name of the school the child attended for Kindergarten. Given the fact that he had recently spoken with [Mother] to congratulate her on her marriage (September 8,

2012), the Court cannot find that he made a diligent search for [K.M.].

* * *

Accordingly, the Court further finds and concludes that:

* * *

2.  Pursuant to I.C. 31-19-9-8(a)(2), consent to an adoption, is not required from:
>       (2) A parent of a child in the custody of another person if for a period of at least one (1) year the parent:
>               (A) fails without justifiable cause to communicate significantly with the child when able to do so . . . .

* * *

7.  In the present case [Father's] last contact with [K.M.] of any significant duration was on or about January 7, 2011.  This Court finds and concludes that [Father] has not had any significant contact with [K.M.] after January 7, 2011.

8.  In addition to the foregoing, the evidence must demonstrate that [Stepfather] and/or [Mother] have not acted to "hamper or thwart" [Father's] efforts to see his son.  In making that determination the court may consider [Mother's] willingness to allow visitation as well as [Father's] financial and other resources needed for his exercise of visitation.

9.  [Father] acknowledged that he had the means to visit [K.M.].

10.  [Mother] did not preclude [Father] from contacting [K.M.] when she lived in New York nor upon her return to Indiana.  It was only in 2011 that, by her own acknowledgement, she discontinued *her* efforts to involve [Father] in [K.M.'s] life.  The Court finds and concludes that the suspension of her active efforts to involve [Father] [in K.M.'s life] is not equivalent to hampering or thwarting [Father's] contact.

* * *

12. [Mother] has acknowledged that she blocked [Father] from her Facebook account and a cell phone in September or October 2011. She did provide him with other means of communication. The other means she offered included a land line that was operative into 2012. Although the answering machine was later disconnected, [Father] was able to communicate with [Mother] by cell phone. He acknowledged that he had an over one hour cell phone call with her in September 2012. . . .

* * *

14. In his deposition testimony [Father] stated that he never heard of [Mother's] address . . . [in] Fort Wayne, Indiana. He testified that he did not know in October 2012 where to find [Stepfather's address]. However, [Stepfather's] address is the address [Mother] occupied with [K.M.] from October 2010 until November 2014; a period of time during which he had communication with [Mother] and visited [K.M.].

15. From the totality of the circumstances this Court does not find that [Mother] or [Stepfather] hampered or thwarted [Father's] contact with his son.

Appendix of Appellant at 10-15 (citations omitted). Based on the foregoing, the trial court determined Father's consent to adoption was not required, and denied his motion to contest the adoption. Father filed a motion to correct error, which the trial court also denied. Father now appeals the denial of his motion to contest the adoption.

# Discussion and Decision

## I. Standard of Review

When we review a trial court's ruling in an adoption proceeding, the ruling will not be disturbed unless the evidence leads to only one conclusion and the trial

court reached the opposite conclusion. *In re Adoption of M.L.*, 973 N.E.2d 1216, 1222 (Ind. Ct. App. 2012). We do not reweigh evidence, and we consider the evidence most favorable to the decision together with reasonable inferences drawn from that evidence. *Id.* Further, we "recognize that the trial judge is in the best position to judge the facts, determine witness credibility, get a feel for the family dynamics, and get a sense of the parents and their relationship with their children." *Id.*

[10] Where, as here, the trial court issued findings of fact and conclusions thereon pursuant to Indiana Trial Rule 52(A), we apply a two-tiered standard of review: (1) we determine whether the evidence supports the findings of fact and (2) whether the findings support the judgment. *In re Adoption of A.S.*, 912 N.E.2d 840, 851 (Ind. Ct. App. 2009), *trans. denied*. The trial court's findings or judgment will be set aside only if they are clearly erroneous. *Id.* A finding of fact is clearly erroneous if the record lacks evidence or reasonable inferences from the evidence to support it. *Id.*

## II.  Lack of Significant Communication

[11] Generally, a petition to adopt a minor child may be granted only if written consent to adopt has been provided by the biological parents. *See* Ind. Code § 31-19-9-1. However, written consent is not required by both parents if the petitioner can show by clear and convincing evidence the biological parent objecting to the adoption lacks significant communication with the child for a period of more than one year. *See* Ind. Code § 31-19-9-8(a)(2)(A); *In re Adoption*

*of S.W.*, 979 N.E.2d 633, 640 (Ind. Ct. App. 2012). To do so, the petitioner for adoption must prove both a lack of communication for the statutory period and the parent had an ability to communicate during that time. *See Rust v. Lawson*, 714 N.E.2d 769, 772 (Ind. Ct. App. 1999), *trans. denied*.

[12] On appeal, we must consider the facts and circumstances of the particular case, including, for example, "the custodial parent's willingness to permit visitation as well as the natural parent's financial and physical means to accomplish his obligations." *Id.* Furthermore, any efforts by the custodial parent "to hamper or thwart communication between parent and child are relevant in determining the ability to communicate." *Id.* The "significance of the communication is not measured in terms of units of visits[,]" *E.W. v. J.W.*, 20 N.E.3d 889, 896 (Ind. Ct. App. 2014), *trans. denied*, so the natural parent must have made "more than token efforts" to communicate with his child, *Rust*, 714 N.E.2d at 772 (internal quotation omitted). The purpose of this provision "is to encourage non-custodial parents to maintain communication with their children and to discourage non-custodial parents from visiting their children just often enough to thwart the adoptive parents' efforts to provide a settled environment for the children." *In re Adoption of C.E.N.*, 847 N.E.2d 267, 272 (Ind. Ct. App. 2006).

[13] In this case, there is no question Father did not communicate with K.M. for the prescribed statutory period. Father and Mother both testified Father has had no contact with K.M. since 2011, a period of more than one year. However, Father argues there is insufficient evidence his consent to the adoption was not required because his ability to communicate with K.M. was thwarted by

Mother. Thus, he asserts his lack of communication with K.M. was justified and his consent to adoption is required.

[14] The evidence most favorable to the trial court's decision supports its finding that Father had the ability to communicate with K.M., but failed without justifiable cause to do so. While Mother's actions raise serious concerns and are relevant factors in determining Father's ability to communicate, we agree with the trial court there were significant periods of time when she was not thwarting his communication with K.M. Ultimately, Father's argument invites us to reweigh evidence and reassess witness credibility, which we will not do. *In re Adoption of M.L.*, 973 N.E.2d at 1222. We acknowledge Father testified his cell phone number was blocked from Mother's cell phone from 2011 until the filing of the petition for adoption, and that his 2012 phone conversation with Mother took place over the home phone, rather than by cell phone. However, Mother testified she only blocked Father's number from her cell phone for forty days in 2011 and that she spoke with Father by cell phone in September of 2012. Clearly, the trial court found Mother's testimony of a temporary cell phone block to be credible, and concluded Father had the ability to contact Mother and K.M. by cell phone. In addition to a cell phone, Mother possessed a land line phone in her home which Father could have used to contact Mother. Mother testified other than temporarily blocking Father's number on her cell phone and from her Facebook account, she did not preclude Father from communicating with K.M. Rather, Father's attempts to communicate with K.M. began occurring less frequently, and eventually stopped altogether.

Further, Father testified he had the financial means and ability to drive to Fort Wayne and visit his son, and did visit Fort Wayne in October of 2012 but left without seeing K.M. Other than this visit, Father made no other effort to visit K.M. Moreover, this court has found the consent statute does not contemplate "regular" communication, but rather that one significant communication (provided that this single communication does not amount to a token effort to contact the child) in a year would have been sufficient, *In re Adoption of Subzda*, 562 N.E.2d 745, 749 (Ind. Ct. App. 1990), and we find it difficult to believe that Father was incapable of communicating even once with K.M. in a period of almost thirty-one months. Therefore, we conclude the evidence is sufficient to support the trial court's finding that Father failed without a justifiable cause to significantly communicate with K.M. for at least one year when he had the opportunity to do so, and that Father's consent to the adoption of K.M. was not required.

## Conclusion

We conclude there was sufficient evidence to support the trial court's finding Father's consent to K.M.'s adoption was not required. Therefore, we affirm the trial court's denial of Father's motion to contest K.M.'s adoption and of his subsequent motion to correct error.

Affirmed.

Mathias, J., and Brown, J., concur.