## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 02 2018, 8:49 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Elden E. Stoops, Jr.
Law Offices of Elden E. Stoops, Jr.
North Manchester, Indiana

ATTORNEY FOR APPELLEE

Pamela Buchanan
Buchanan & Bruggenschmidt, P.C.
Zionsville, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

In re the Adoption of P.H. and M.H., Minor Children,

B.H.,

*Appellant-Respondent,*

v.

M.S.,

*Appellee-Petitioner*

March 2, 2018

Court of Appeals Case No.
06A01-1706-AD-1494

Appeal from the Boone Superior Court

The Honorable Matthew C. Kincaid, Judge

Trial Court Cause Nos.
06D01-1606-AD-7
06D01-1606-AD-8

**Baker, Judge.**

[1] B.H. (Father) appeals the trial court's order permitting M.S. (Stepfather) to adopt Father's biological children without Father's consent, arguing that the trial court erred by finding that for at least one year, Father failed to support his children when able to do so and failed to communicate significantly with his children when able to do so. Finding no error, we affirm.

## Facts

[2] T.H.S. (Mother) and Father are the biological parents of two minor children, M.H. and P.H. In 2009, Mother and Father divorced in Texas, and that same year, Mother moved to Indiana to be near her family. The final divorce decree awarded Mother primary physical custody and the parents joint legal custody. In the decree, Mother agreed to waive Father's child support obligation for four years to allow Father time to complete his college education or start a profession if he chose to do so. Mother paid all of the children's living expenses during these four years. The decree ordered Father to start paying child support to Mother on March 1, 2013; ordered that his child support obligation would be calculated based on Father earning the minimum hourly wage if Father was unemployed on March 1, 2013; divided parenting time between the parents; ordered Mother to provide health insurance for the children; and ordered Mother and Father to divide equally the children's uninsured healthcare costs.

[3] Father did not start paying child support on March 1, 2013, nor did he contribute financially to the children's uninsured healthcare expenses. Since

March 1, 2013, Father has been gainfully employed, including a two-year stint as a successful salesperson for an electronics store.

[4] Since the divorce, Father has moved several times in Texas, Georgia, and South Carolina. Father did not notify the trial court of his new addresses. Mother tried to encourage Father to establish regular contact with the children, sent Father photographs of them, and emailed Father with updates about them. Mother emailed Father about his child support obligation several times and asked for his income records, but Father did not respond to Mother's emails or provide copies of his tax returns. Mother occasionally mailed packages to Father at Father's last-known address, often including a letter from Mother, information about and copies of receipts for the children's uninsured health-care expenses, and current photographs of the children. Most of the packages were returned to Mother, marked "unclaimed or unknown addressee." Tr. Vol. II p. 65.

[5] Father did not exercise all the parenting time he was entitled to, and despite an order requiring him to provide notice to Mother if he was unable to exercise his parenting time, Father routinely failed to provide such notice to Mother. Father's contact with the children included the following:

- In 2010, Father spoke with the children by phone four times and by Skype once for a total of 105 minutes. In June, Mother took the children to Texas for a three-day visit with Father. In November, Father saw the children when Mother took them to South Carolina to visit their paternal grandmother.

- In 2011, Father spoke with the children by phone five times for a total of one hundred minutes. In May, Mother took the children to Texas for a three-day visit with Father.
- In 2012, Father spoke with the children by phone twice and by Skype once for a total of ninety-four minutes. In November, Father saw the children during their four-day visit to their paternal grandmother in South Carolina.
- In 2013, Father spoke with the children by phone ten times and by Skype once for a total of 189 minutes. In November, the children had a two-day visit with Father in Atlanta, during which the children called Mother because Father had no food for them in his apartment. Father also saw the children during their ten-day visit to their paternal grandmother in South Carolina.
- In 2014, Father spoke with the children by phone twice and by Skype twice for a total of fifty-five minutes. In July, the children again visited their paternal grandmother in South Carolina; Father saw the children on four of the ten days of their visit. In November, Father drove to Indiana for a visit with the children that lasted less than twenty-four hours.
- In 2015, Father spoke with the children by phone twice and by Skype once for a total of forty-eight minutes. In March 2015, Father left his daughter a voicemail message wishing her a happy birthday, despite her birthday being in September.

[6] In 2014, Mother married Stepfather. On June 3, 2016, Stepfather petitioned to adopt M.H. and P.H. In his petition, Stepfather alleged that Father's consent to his adoption of the children was not required because Father had failed without justifiable cause to communicate significantly with the children when able to do so and that Father had knowingly failed to provide for the care and support of the children when able to do so for at least one year. On June 20, 2016, Father filed a motion contesting the adoptions.

A hearing took place on May 1, 2017, to address whether Father's consent to Stepfather's adoption of the children was necessary. On June 19, 2017, the trial court found that Father's consent to Stepfather's adoption of the children was not required. The trial court made the following findings:

1. [Father] has been under a child support order . . . . He was to pay 50% of uninsured medical expenses of the children and he was to pay support after March 1, 2013.

2. Father failed to reimburse Mother for medical expenses and prescription[s] incurred on behalf of the children during 2010 through 2013.

3. Father paid Mother no child support from March 1, 2013 through 2015.

4. Father worked as an account executive for Yellow Pages.com for part of 2012 and 2013. He worked as a bartender from April of 2012 until August of 2012. He worked for Conn's Electronics and Appliances from March of 2010 until April of 2012 – he was in the top 100 of sales for five consecutive months with a sales force of 2,500 peers, he was number 1 in warranties sold for seven consecutive months at his store and he was among the top ten additional warranty sellers company wide. Father also worked for Verizon Wireless from 2008-2010. Father is college educated and has experience with the United States Naval Submarine service. Father has been issued 1099 forms and [W]-2 statements showing income and earnings. Father was able to earn and pay his obligations and for several years he did not.

5. Additionally Father has had sporadic and rare communication with the children. In 2010, Father spoke with the children over the phone a total of 105 minutes. The children

initiated all the calls. He only saw the children on two occasions for eight total days – three days in June and five days in November.

6. In 2011, Father spoke with the children over the phone a total of 100 minutes. The children initiated all the calls. He only saw the children on one occasion for three total days in May of 2011.

7. In 2012, Father spoke with the children over the phone and/or skype a total of 94 minutes. The children initiated the telephone calls. He only saw the children on one occasion for four total days in November of 2012.

8. In 2013, Father communicated by phone or skype 189 minutes and saw them for parts of twelve days.

9. In 2014, Father communicated by phone or skype 55 minutes and saw them for parts of four days.

10. In 2015, Father communicated by phone with the children on three occasions for a total of 48 minutes. He did not see the children in person the whole year.

11. Most of the in-person visits were really paternal grandmother visits.

12. Father texted and communicated rather often with Mother, seeking her counsel on romantic matters.

13. Father curiously called [M.H.] and left a very [serious] sounding happy birthday voice mail message months from her actual birthday. Mother has engaged professional counseling to assist the children with coping with lack of significant communication by their father.

14. Generally, adoption of a child requires the consent of natural parents. But consent to adoption is not required from a parent of a child in the custody of another person if for a period of at least one (1) year the parent fails without justifiable cause to communicate significantly with the child when able to do so; or knowingly fails to provide for the care and support of the child when able to do so as required by law or judicial decree. I.C. 31-19-9-8(a)(2).

15. [Father] without any justifiable cause failed to communicate significantly with his children when he was able to do so for more than a year – this has been shown by clear and convincing evidence.

16. [Father] was able to provide support for his children, knew he was obliged by the terms of the decree to do so and failed to do so for more than one year – this too has been shown by clear and convincing evidence.

Appealed Order p. 1-2. Father now appeals.

# Discussion and Decision

[8] Father argues that the trial court erred by concluding that his consent to the children's adoption by Stepfather is not required. When we review a trial court's ruling in an adoption proceeding, we will not disturb that ruling unless the evidence leads to but one conclusion and the trial court reached an opposite conclusion. *J.H. v. J.L. & C.L.*, 973 N.E.2d 1216, 1222 (Ind. Ct. App. 2012). On appeal, we will not reweigh the evidence, instead focusing on the evidence and inferences most favorable to the trial court's decision. *Id.* We generally give considerable deference to a trial court's rulings in family law matters, "as

we recognize that the trial judge is in the best position to judge the facts, determine witness credibility, get a feel for family dynamics, and get a sense of the parents and their relationship with their children." *Id.*

[9]     Generally, a noncustodial biological parent's consent to adoption is required before an adoption petition may be granted. Ind. Code § 31-19-9-1(a)(2). However, consent to adoption is not required from

> (2) A parent of a child in the custody of another person if for a period of at least one (1) year the parent:
>
>> (A) fails without justifiable cause to communicate significantly with the child when able to do so; or
>>
>> (B) knowingly fails to provide for the care and support of the child when able to do so as required by law or judicial decree.

I.C. § 31-19-9-8(a). It is well established that the provisions of Indiana Code section 31-19-9-8 are disjunctive, and "as such, either provides independent grounds for dispensing with parental consent." *In re Adoption of T.W.*, 859 N.E.2d 1215, 1218 (Ind. Ct. App. 2006).

[10]    Father first argues that the trial court erred by finding that Father was able to provide support for his children because the trial court did not address Father's disposable income. Specifically, he argues that the evidence presented at trial regarding his income was deficient because the evidence did not reveal Father's business or personal expenses. The record shows that Father was gainfully

employed from the date of the parents' divorce through the date of the hearing. During the hearing, Father testified that he could not afford to pay child support until 2016, when he began a better-paying job. But Father was under a court order to start paying child support on March 1, 2013, and the record clearly shows that between March 1, 2013, and December 31, 2015, he did not provide any child support to his children. If Father was unable to pay child support during this time, he bore the responsibility to file a motion to modify his child support obligation. Father did not present any evidence of having done so or having tried to do so. Moreover, Father was the party in possession of the details of his employment and income history. The trial court cannot be faulted for failing to rely on evidence that Father never submitted. Under these circumstances, we will not second-guess the trial court's determination that Father was able to provide for the care and support of his children but failed to do so for at least one year.

[11] Because the trial court did not err by finding that Father failed to provide support for the children for more than one year despite being able to do so, we need not discuss Father's argument regarding his communication with his children. Nonetheless, we will still address his arguments that the trial court erred by minimizing the contacts between Father and the children and by overlooking Mother's interference with Father's communication with the children.

[12] The inquiry regarding parent-child communication under the statute is highly fact- and context-specific. *Rust v. Lawson*, 714 N.E.2d 769, 772 (Ind. Ct. App.

1999). The inquiry is guided by the statute's purpose: to "foster and maintain" communication between a noncustodial parent and his child, "not to provide a means for parents to maintain just enough contact to thwart potential adoptive parents'[ ] efforts to provide a settled environment [for] the child." *C.H. v. E.W.*, 713 N.E.2d 873, 876 (Ind. Ct. App. 1999). Whether communication was significant is not to be measured merely in units. *J.W. v. D.F.*, 79 N.E.3d 394, 397 (Ind. Ct. App. 2017). One significant communication in a year would be sufficient to bar nonconsensual adoption; however, even multiple, fairly consistent contacts may not be found significant in context. *Id.* The law holds a noncustodial parent responsible for maintaining a relationship with his child if he is to successfully resist an adoption petition. *Id.* The custodial or prospective adoptive parents are under no obligation to arrange or facilitate the noncustodial parent's communication, or to serve his convenience. *Id.* at 398.

[13] Father first contends that the contacts between him and his children "were significant as a matter of law" because "he maintained at least one contact with them, in each year under scrutiny." Appellant's Br. p. 11-12. But he fails to explain why these contacts are significant. Moreover, he disregards this Court's holding that even multiple, fairly consistent contacts may not be found significant in context. When considering the context of Father's phone calls with the children, the trial court found that the children initiated many of the phone calls. And while Father attempts to explain that they called him because he had requested to talk to them, he ignores the fact that the law holds the parent, not the children, responsible for maintaining their relationship. As for

his in-person visits with the children, most of those took place because Mother transported the children to visit Father or because Father saw the children during their visits with their paternal grandmother in South Carolina. The record shows that although Father always knew the children's location and Mother's cell phone number and email address, he rarely called the children and did not send them letters, cards, or gifts. In short, Father was aware of different methods through which he could communicate with his children, and he chose not to do so.

[14] Father next contends that Mother interfered with his communication with the children. Yet the record shows that, rather than interfere with their relationship, Mother attempted to foster a positive relationship between Father and the children, sending him packages with updates on their lives and travelling with them at her own expense to visit Father. Father's only support for his argument is his own testimony. The trial court was in the best position to assess witness credibility, and we will not second-guess the trial court's determination that Father's credibility was lacking. The trial court did not err by finding that, for at least one year, Father failed without justifiable cause to communicate significantly with the children when able to do so.

[15] The judgment of the trial court is affirmed.

Riley, J., and Brown, J., concur.