## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 24 2018, 8:55 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Brian M. Pierce
Muncie, Indiana

ATTORNEYS FOR APPELLEES

David W. Stone IV
Anderson, Indiana

Steven J. Bruce
Muncie, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

R.H.,

*Appellant-Respondent,*

v.

L.H. and C.H.,

*Appellees-Petitioners.*

July 24, 2018

Court of Appeals Case No.
18A-AD-174

Appeal from the Delaware Circuit Court

The Honorable John Feick, Judge

Trial Court Cause No.
18C04-1702-AD-12

**Altice, Judge**

# Case Summary

R.H. (Mother) appeals the trial court's grant of a petition to adopt the minor child T.H.H. (Child) filed by L.H. (Stepmother) and C.H. (Father).  Mother presents the following, restated issues for our review:

> 1. Whether the trial court erred in concluding that Mother's consent to the adoption was not required based on Mother's failure to provide support;
>
> 2. Whether the trial court failed to provide Mother with notice of the final adoption hearing; and
>
> 3. Whether the trial court's finding that adoption was in the best interests of Child was clearly erroneous.

We affirm.

# Facts & Procedural History

Mother and Father were married on June 21, 2008.  Child was born to Mother and Father on October 12, 2010.  During the marriage, Mother became addicted to opiates.  She primarily used opiate-based prescription medication and heroin.  Mother spent significant portions of 2013 and 2014 incarcerated for various crimes related to her drug addiction.  During that time, Father cared for Child.

Mother and Father divorced on May 7, 2014.  Under the dissolution decree, Mother and Father were awarded joint legal custody of Child; Father was awarded sole physical custody of Child; and Mother received supervised

parenting time every other weekend, with holidays and special days. Mother was directed to pay child support to Father in the amount of $39.00 per week, effective March 21, 2014. Mother made no support payments to Father between March 21, 2014, and June 20, 2017, but an offset made her current through 2014.[1]

[5] Mother is a high school graduate, has a degree in Criminal Justice from Ball State University, and worked for seven years in the legal department of a financial institution as a trust and estate specialist. After her divorce, however, and while battling her drug addition, she was employed in minimum wage jobs. At various times, Mother lived with her father, her brother, her mother, and her boyfriend. Mother used some of her income toward her residential obligations. Her boyfriend, who was employed, paid most of the household bills when the two lived together. However, no part of Mother's income from any of her jobs was used to pay her court-ordered child support obligation.

[6] Mother smokes cigarettes daily. Between July 2014 and June 2017, she smoked approximately $5.00 worth of cigarettes each day. Between 2015 and June 2017, she spent approximately $4,500.00 on her smoking habit. Mother testified that she personally paid at least a third of that amount toward her

---

[1] The dissolution decree directed Father to pay to Mother $2,000.00 to equalize the property distribution. Toward the end of 2014, Mother and Father entered into an agreement regarding Father's equalization payment obligation and Mother's child support obligation. The two agreed that, for the year 2014, their obligations would offset each other. Based upon this agreement, the trial court found Mother to be current with her support payment through 2014, but not beyond.

habit. The balance was paid for by other individuals. Also from 2015 to June 2017, Mother spent between $6,500.00 and $7,000.00 to support her heroin habit. Her eight-month treatment for her addiction, through a methadone clinic, cost approximately $3,840.00 and was paid for by her mother and her boyfriend.[2]

[7] Mother exercised her weekend parenting time with Child. At trial, she testified that during the visits, she fed Child; she bought him gifts, clothing, and toys; she took him to the zoo and bought him "souvenir[s] wherever we went"; and, she "threw birthday parties for [Child]." *Transcript* at 67, 71.

[8] Father married Stepmother on April 30, 2016. Child has lived with Father and Stepmother since March 2015. In February of 2017, Father and Stepmother petitioned for Stepmother to adopt Child. Mother filed an objection.

[9] Mother made her first child support payment approximately four months after the adoption petition was filed and several weeks after she hired an attorney. Mother has continued to make support payments since June 20, 2017; however, she had accrued an arrearage of more than $5,000.00.

[10] On September 29, 2017, the trial court held an evidentiary hearing on whether Mother's consent to the adoption was required. On November 3, 2017, the court issued "Findings of Fact, Conclusions of Law, and Order," concluding

---

[2] The costs associated with Mother's current methadone treatment is covered by Medicaid.

that Father presented clear and convincing evidence that Mother had knowingly failed to provide for the care and support of Child when she was able to do so, and that Mother's consent to the adoption was implied.[3] The court also dismissed her objection to the adoption.

[11] On December 13, 2017, Father filed a motion to set the final adoption for a hearing and, that same day, the trial court issued an order setting the final adoption for hearing. The hearing was held on December 21, 2017. Mother was not present at the hearing. Following the hearing, the trial court issued the final adoption decree, finding that Child's adoption by Stepmother was in Child's best interests. The court terminated Mother's parental rights and granted the adoption of Child by Stepmother. Mother now appeals. Additional facts will be provided as necessary.

## Discussion & Decision

[12] When reviewing a trial court's ruling in an adoption proceeding, we will not disturb that ruling unless the evidence leads to but one conclusion and the trial judge reached an opposite conclusion. *Rust v. Lawson*, 714 N.E.2d 769, 771

---

[3] The trial court used the wrong terminology in its November 3, 2017 order when it concluded: "Mother's consent [to the adoption] shall be implied . . . ." Implied consent to an adoption is governed by Ind. Code § 31-19-9-18, which reads in relevant part: "The consent of a person who is served with notice . . . to adoption is irrevocably implied without further court action if the person . . . fails to file a motion to contest the adoption . . . not later than thirty (30) days after service of notice . . . ." Mother filed an objection to the adoption. Therefore, I.C. § 31-19-9-18 is not applicable. It appears the trial court intended to conclude that Mother's consent to the adoption was not required. *See* I.C. § 31-19-9-8(a)(2) (a parent's consent to adoption is not required "if for a period of at least one (1) year the parent . . . knowingly fails to provide for the care and support of the child when able to do so as required by law or judicial decree").

(Ind. Ct. App. 1999), *trans. denied*. We will not reweigh the evidence but instead will examine the evidence most favorable to the trial court's decision together with reasonable inferences drawn therefrom to determine whether sufficient evidence exists to sustain the decision. *Id*. The decision of the trial court is presumed to be correct, and it is the appellant's burden to overcome that presumption. *Id*.

[13] When, as in this case, the trial court has made findings of fact and conclusions thereon, we apply a two-tiered standard of review: "we must first determine whether the evidence supports the findings and second, whether the findings support the judgment." *In re Adoption of T.L.*, 4 N.E.3d 658, 662 (Ind. 2014). Factual findings "are clearly erroneous if the record lacks any evidence or reasonable inferences to support them [and] . . . a judgment is clearly erroneous when it is unsupported by the findings of fact and the conclusions relying on those findings." *Id*. (internal quotation omitted).

## 1. Mother's Consent

[14] Mother argues that the trial court erred when it concluded that her consent to the adoption was not required. Indiana law provides that a parent's consent to adoption is not required "if for a period of at least one (1) year the parent . . . knowingly fails to provide for the care and support of the child when able to do so as required by law or judicial decree." I.C. § 31-19-9-8(a)(2)(B). The burden to prove these statutory criteria is satisfied by clear and convincing evidence and rests squarely upon the petitioner seeking to adopt. *In re Adoption of M.A.S.*,

815 N.E.2d 216, 220 (Ind. Ct. App. 2004). The "petitioner for adoption must show that the non-custodial parent had the ability to make the payments which [s]he failed to make." *In re Adoption of Augustyniak,* 508 N.E.2d 1307, 1308 (Ind. Ct. App. 1987), *trans. denied.* To determine that ability, it is necessary to consider the totality of the circumstances. *Id.*

[15] Here, there is no question Mother did not make the court-ordered child support payments for a period exceeding one year. The record shows that Mother did not make payments, at least, between January 2015, and June 20, 2017. Thus, the question before us is whether Mother had the *ability* to provide support of the Child. *See* I.C. § 31-19-9-8(a)(2)(B).

[16] Mother claims that:

> [H]er circumstances including, but not limited to, her ongoing battle with addiction, her good-faith effort at recovery, reliance on the belief that Father did not want/need the support, and her continued parenting-time with her child, demonstrate that she lacked the ability to pay her support obligation, and/or had justifiable cause for her failure to pay support.

*Appellant's Brief* at 13. According to Mother:

> The circumstances of [her] failure to pay support, when viewed in totality, clearly show a mother: struggling with her addiction to opiates; actively involved in addiction treatment; working minimum wage jobs even though well educated; willing to allow father to maintain physical custody; maintaining joint legal custody; and continuing to visit with the child on a consistent and regular basis. Moreover, the evidence demonstrates that [she] fully relied on [Father's] statements that he didn't need

support, wasn't worried about support, and could financially provide for his child. [Father] took no action to collect the support [she] owed.

*Id*. at 15. Mother maintains that she "is first, and foremost, an opiate addict fighting a continuous battle between active-use and recovery" and that, "[b]ecause of her opiate addiction, every area of her life, including her ability to support her child, has been affected." *Id*. at 13. She admits that most of the money she earned from 2014 to 2017 went toward the purchase of illegal drugs and treatment for her addiction, court costs and legal fees related to her addiction, and/or personal expenses. She claims that "[f]ailure to pay for, and attend treatment, would have increased [her] chances of using"; that "[f]ailure to pay court costs and fines would have left [her] in jail"; and that "[both of these things] would have left her unable to visit her child." *Id*. at 14.

[17] Mother attempts to justify her failure to pay child support on multiple conversations she claims to have had with Father about the child support obligation. She claims that Father would always respond that he was "'not worried about it.'" *Appellant's Appendix Vol. 2* at 12. At trial, Father denied telling Mother not to pay the support but admitted that, on one occasion, he told her he was not worried about the child support.

[18] In its findings of fact and conclusions thereon, the trial court found that Mother was able to maintain a number of jobs; and that she admitted she was adept at obtaining employment, suffered from no disabilities, and was not physically prevented from working. The court further found that instead of paying the

support obligation, Mother "chose to pay for heroin"; she "sold property to pay for heroin"; but she "never sold any property to pay her Court-ordered child support obligation." *Id.* at 11.

[19] The trial court noted the following:

> 22. That in 2015, [Mother] was able to procure a new bedroom furniture suite. She states her mother and boyfriend helped her purchase this suite. This suite cost approximately $1,500.00.
>
> 23. That in 2017, prior to making her first judicially decreed support payment, [Mother] paid an attorney $750.00 for representation.
>
> 24. That in 2016, [Mother] managed to pay a traffic ticket in Marion County. [Mother] testified her mother helped her pay this ticket. This expense was $62.00.
>
> 25. That in 2015, [Mother] paid off a speeding ticket in Hancock County. This expense was $130.00.
>
> 26. That after her felony conviction in Delaware County, [Mother] made payments towards court ordered responsibilities.
>
> *****
>
> 28. That [Mother] has been able to keep herself clothed and fed since 2014.
>
> 29. That [Mother] has not, as of this time, filed for bankruptcy.

*Id.* The court also noted:

36. That [Mother] also claims that she told [Father] that she was "trying to put [her] life together" and that [Father] never told her they needed her help. [Mother] felt "conned" into not paying the court ordered support by [Father] and that he was inducing her not to pay child support.

\*\*\*\*\*

38. That [Mother] testified that "I was supporting my son the best that I could" and that "[Child] has benefited from my emotional and motherly support, versus money, more."

\*\*\*\*\*

42. That regardless, both parties agree that [Mother] was very aware of her obligation and her ongoing failure to comply with the judicial decree. [Father] testified that he has asked her many times when she's going to start paying. [Mother] repeatedly agreed that not a single cent of earned income from 2015 to June 2017 was used for support.

*Id*. at 12-13.

[20] The trial court concluded:

16. Here, [Mother] has offered up a number of alternative basis [sic] for her failure to pay support (as an alternative to her argument that she has provided care and support, which would be based on holdings not applicable where there is a judicial decree for [support).] When looking at the totality of the circumstances, it is clear that [Mother] had significant third party [sic] support; had many jobs with earning[s]; did not even always bear a significant, if any, expense of housing, transportation, or utilities; was able to sell property and perform services to obtain

drugs; was able to pay for cigarettes; able to feed and clothe herself; has no other dependents; is not physically unable to work; and was able to afford significant expense in Methadone. When aggregated, in addition to her many jobs, [Mother] produced no information suggesting she could pay nothing to meet her legal obligation. Her position that [Father] was not worried about child support and that he somehow "conned" her into not paying support is not persuasive in light of her attitude towards paying any support; her statements that [Child] is well cared for where he lives and doesn't need her support; and her prioritizing her own financial needs and desires over the judicially decreed support obligation.

\*\*\*\*\*

18. [Mother] financed heroin consumption from 2015 into early 2017. [Mother] both earned money and had significant assistance from third parties in the same time frame. Her priorities did not include providing care and support pursuant to the judicial decree entered in 2014.

19. [Father] has presented clear and convincing evidence that [Mother] has knowingly failed to provide for care and support of [Child] and that she was able, but chose not, [sic] to do so as she is required by judicial decree.

*Id*. at 15-16.

[21]   The evidence presented at the consent hearing established that Mother had a court-ordered financial obligation, as set forth in the dissolution decree, to pay child support to Father in the amount $39.00 per week. She fed Child and, apparently, provided Child with token amounts of clothing, toys, souvenirs, and gifts during visitations, but Mother made no actual financial support

payments to Father between January 2015, and June 20, 2017. *See, e.g., Irvin v. Hood*, 712 N.E.2d 1012, 1013 (Ind. Ct. App. 1999) (holding that the father had failed to support his child despite fact that he provided six items of clothing for the child and some food during child's visits with paternal grandparents); *M.A.S.*, 815 N.E.2d at 220 n.1 (holding that the father's occasional provision of groceries, diapers, formula, clothing, presents, and cash did not qualify as support). In fact, Mother did not make her first support payment until four months after the petition for adoption was filed and after she had paid $750.00 to an attorney to represent her in the matter. She testified at trial that she thought it was "B.S." that she had to pay child support when Father was making $35.00 per hour. *Transcript* at 19.

[22] Mother admitted that she was able to work, and that, between 2014 and 2016, she was working and earned money – at times earning between $700.00 and $1,000.00 per month. However, Mother used the money to support her daily cigarette smoking habit and to purchase illegal drugs. She testified that she was able to pay the fines for the traffic and speeding tickets she received, and to clothe and feed herself, but she failed to use any of her earnings to make child support payments. At various times, Mother lived with her father, her mother, and her boyfriend and contributed minimally to household expenses. When Mother lived with her boyfriend, he paid most of the household bills. Mother had third parties paying for her methadone treatments and purchasing her new furniture.

[23] Ample evidence was presented to support the trial court's conclusion that Mother failed to provide for Child's care or support for over one year, and that she was able to pay child support but chose not to do so. The trial court's findings regarding such were not clearly erroneous. Mother's arguments are nothing more than an invitation to reweigh the evidence and reassess witness credibility, which we will not do. *See In re Adoption of O.R.*, 16 N.E.3d 965, 973 (Ind. 2014). The trial court did not err in concluding that Mother's consent to the adoption was not required based on Mother's failure to provide support.

## 2. Notice of Adoption Hearing

[24] Mother next contends that she did not receive notice of the final adoption hearing. However, the chronological case summary (CCS) shows that notice of the trial court's order setting the final hearing was sent to the attorneys of record, including Mother's attorney, by "ENotice."[4] *Appellant's Appendix* at 6. Notice or information given to an attorney constitutes notice to his client. *Reynolds v. State*, 463 N.E.2d 1087, 1088 (Ind. 1984). It is well-settled that "[a] challenge to the mailing of notice is precluded when the docket clearly states that notice was mailed." *Minnick v. Minnick*, 663 N.E.2d 1226, 1228 (Ind. Ct. App. 1996); *see also Trojnar v. Trojnar*, 698 N.E.2d 301, 304 (Ind. 1998) (in

---

[4] Ind. Trial Rule 72(D) provides in relevant part: "It shall be the duty of the attorneys . . . when entering their appearance in a case or when filing pleadings or papers therein, to have noted on the Chronological Case Summary and on the pleadings or papers so filed, their mailing address, and an electronic mail address. Service at either address shall be deemed sufficient."

context of T.R. 72, a proper clerk's notation on the CCS will presumptively establish the fact that notice was mailed).

[25] Moreover, Mother did not call the lack of notice of the hearing to the attention of the trial court. Rather, she raises the matter for the first time on appeal. As such, Mother has waived any allegation of error with respect to whether she received notice of the final adoption hearing. *See In re K.S.*, 750 N.E.2d 832, 834 n.1 (Ind. Ct. App. 2001) (Mother waived issue concerning alleged violation of due process rights because issue was raised for the first time on appeal).

[26] Finally, we note that Mother knew of the adoption proceedings because she (among other things) attended the September 29, 2017 consent hearing, where she was represented by counsel. Furthermore, she knew that Child's adoption by Stepmother was imminent because she received the trial court's order that concluded her consent to the adoption was not required and her objection to the adoption was dismissed. *See Appellant's Appendix* at 6.

## 3. Best Interests of Child

[27] Mother also challenges the trial court's determination that adoption was in Child's best interests. The primary concern in every adoption proceeding is the best interests of the child. *In re Adoption of M.L.*, 973 N.E.2d 1216, 1224 (Ind. Ct. App. 2012). Even if a court determines that a natural parent's consent is not required for an adoption, the court must still determine whether adoption is in the child's best interests. *See* I.C. § 31–19–11–1(a)(1). "When reviewing the trial court's ruling in an adoption proceeding, we will not disturb that ruling

unless the evidence leads to but one conclusion and the trial judge reached an opposite conclusion." *T.L.*, 4 N.E.3d at 662.

[28] We note that the adoption statute does not provide guidance for which factors to consider when determining the best interests of a child in an adoption proceeding, but we have noted that there are strong similarities between the adoption statute and the termination of parental rights statute in this respect. *See M.L.*, 973 N.E.2d at 1223 (holding that the adoption statutes and the termination statutes provide similar balances between parental rights and the best interests of the children). In termination cases, we have held that the trial court is required to look to the totality of the evidence to determine the best interests of a child. *In re I.A.*, 903 N.E.2d 146, 155 (Ind. Ct. App. 2009).

[29] Mother maintains that the final adoption hearing was "merely ceremonial in nature," and that, during the hearing, "no evidence was offered, and no determination was made, as to whether the granting of the adoption was in the best interests of the child." *Appellant's Brief* at 16-17. Mother also argues that she should have been allowed to participate in the hearing and present evidence regarding whether the adoption was in Child's best interests.

[30] We already have determined that Mother waived any allegation of error regarding whether she received notice of the final adoption hearing. As for whether the adoption was in the best interests of Child, based upon the totality of the evidence presented during the adoption proceedings, we find that it was.

Mother attended the September 29, 2017 consent hearing and was represented by counsel. The evidence presented at the hearing established that Mother has a history of drug abuse and that Child was in the care and physical custody of Father since early 2013. Although Mother was employed, earned income, and had her housing and household expenses subsidized, she did not make any payments toward her court-ordered child support obligation until four months after the adoption petition was filed. She, instead, chose to spend the money on her cigarette and illegal drug habits, drug treatment, and fines for traffic infractions. Mother exercised visitation with Child, when she was not incarcerated, and she testified that during the visits, she fed Child, threw birthday parties for him, and bought him gifts, clothing, and toys. However, other evidence was presented indicating that, during visitation, Mother engaged in illicit activities with men for money while Child was in his bedroom in the home where Mother resided.

The trial court held a final adoption hearing, following which the trial court determined that Child had resided with Stepmother and Father since March 2015, and that Stepmother and Father were capable of raising Child and furnishing him with suitable support and education. The court concluded that Child's adoption by Stepmother was in Child's best interests.

Based upon the totality of the evidence presented during the adoption proceedings, we cannot say that the evidence leads only to the opposite conclusion of that reached by the trial court. We therefore find that the trial

court's conclusion that the adoption of Child by Stepmother was in Child's best interests was not clearly erroneous.

[34] Judgment affirmed.

Najam, J. and Robb, J., concur.