

FILED

Apr 20 2018, 9:37 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

**ATTORNEY FOR APPELLANT**

Joseph Leon Payne
Payne Law Office, LLC
Austin, Indiana

**ATTORNEYS FOR APPELLEE**

Matthew J. McGovern
Anderson, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In Re the Adoption and
Paternity of K.A.W.

J.R.C.,

*Appellant-Respondent,*

v.

J.C. and D.C.,

*Appellees-Petitioners*

April 20, 2018

Court of Appeals Case No.
31A01-1712-AD-2797

Appeal from the Harrison Circuit
Court

The Honorable John T. Evans,
Judge

Trial Court Cause Nos.
31C01-1602-AD-5
31C01-1512-JP-35

**Baker, Judge.**

[1] J.R.C. (Putative Father) appeals the trial court's order dismissing his petition to establish paternity of K.A.W. (Child) and granting the petition to adopt Child that had been filed by J.C. and D.C. (Adoptive Parents). Putative Father argues that the trial court erred by finding that his consent to the adoption was irrevocably implied and by granting the adoption petition without a statutorily required affidavit. Finding no reversible error, we affirm.

## Facts

[2] Child was born to D.W. (Mother) on April 15, 2014. Putative Father has been incarcerated since before Child's birth. Mother has also been incarcerated periodically throughout Child's life; Child has always lived with Adoptive Parents, who are relatives of Mother. On December 15, 2015, Putative Father filed a petition to establish paternity; shortly thereafter, he filed a motion for a DNA test.

[3] On February 8, 2016, Adoptive Parents filed a petition to adopt Child. The trial court ordered the paternity and adoption causes consolidated on April 19, 2016. In July 2016, the trial court granted Putative Father's motion for a DNA test. On November 17, 2016, the DNA test report was filed with the court indicating a 99.99% probability that Putative Father is Child's biological father.

[4] On December 9, 2016, Putative Father filed a motion to contest the adoption. Mother consented to the adoption on August 7, 2017. Thereafter, Adoptive Parents asked the trial court to find that Putative Father's consent to the

adoption was irrevocably implied. On August 26, 2017, Putative Father registered as a putative father of Child.

[5]     On August 30, 2017, the trial court entered an order staying Putative Father's petition to establish paternity, finding that Putative Father's consent to the adoption was irrevocably implied. The trial court found that Father "has never registered as [Child's] putative father. Thus, he was not registered at the time [Adoptive Parents'] petition to adopt [Child] was filed, which is the relevant deadline." Appealed Order p. 2. Further, the failure to timely register with the putative father registry "constitutes an irrevocably implied consent" to the adoption. *Id.*

[6]     In the final adoption decree, which was issued on November 7, 2017, the trial court found as follows with respect to Putative Father:

> 37.     [Putative Father] is incarcerated by the Indiana Department of Correction[] in Branchville, Indiana. He has been in custody for the last three years.
>
> 38.     [Putative Father] has used illegal drugs "off and on" his entire adult life. At the time of his arrest he was found to be operating a methamphetamine "lab" in the [Putative Father's] home. His most recent charges of possession of methamphetamine arose while he was on probation having been convicted [of] possessing methamphetamine.
>
> 39.     [Putative Father] has never seen [Child] in person. [Putative Father] has never spoken to [Child]. Since this case was initiated, [Putative Father] has sent two cards to

[Child], a Christmas Card in 2016, and a Birthday Card in 2017.

\*\*\*

43. [Putative Father] registered with the Indiana Putative Father Registry on or about August, 2017.

\*\*\*

45. [Putative Father] failed to register with the Putative Father Registry within the period specified by Indiana Statute. [Putative Father] has waived notice of this adoption proceeding. Therefore, [Putative Father's] waiver constitutes his irrevocably implied consent to [Adoptive Parents'] adoption of [Child].

*Id.* at 10-11. The trial court dismissed Putative Father's petition to establish paternity with prejudice. Putative Father now appeals.

## Discussion and Decision

Our Supreme Court has set forth the standard of review of adoption decrees as follows:

> "When reviewing the trial court's ruling in an adoption proceeding, we will not disturb that ruling unless the evidence leads to but one conclusion and the trial judge reached an opposite conclusion." *Rust v. Lawson,* 714 N.E.2d 769, 771 (Ind. Ct. App. 1999). We presume the trial court's decision is correct, and we consider the evidence in the light most favorable to the decision. *Id.* at 771–72.

When, as in this case, the trial court has made findings of fact and conclusions of law, we apply a two-tiered standard of review: "we must first determine whether the evidence supports the findings and second, whether the findings support the judgment." *In re Adoption of T.W.,* 859 N.E.2d 1215, 1217 (Ind. Ct. App. 2006); *see also* Ind. Trial Rule 52(A) (providing that where the trial court has made findings of fact and conclusions of law, "the court on appeal shall not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses."). Factual findings "are clearly erroneous if the record lacks any evidence or reasonable inferences to support them [and] . . . a judgment is clearly erroneous when it is unsupported by the findings of fact and the conclusions relying on those findings." *T.W.,* 859 N.E.2d at 1217.

*In re Adoption of T.L.*, 4 N.E.3d 658, 662 (Ind. 2014). As always, we apply a de novo standard of review to issues of law, including issues of statutory interpretation. *E.g.*, *In re Adoption of J.R.O.*, 87 N.E.3d 37, 42 (Ind. Ct. App. 2017).

[8] Putative Father first argues that the trial court erred by finding that his consent to the adoption was irrevocably implied because he failed to register as a putative father in a timely fashion. Indiana Code section 31-19-5-18 provides as follows: "[a] putative father who fails to register within the period specified by section 12 of this chapter waives notice of an adoption proceeding. The

putative father's waiver under this section constitutes an irrevocably implied consent to the child's adoption."[1]

[9]     To comply with Indiana Code section 31-19-5-12, Putative Father was required to register within thirty days of Child's birth or by the date on which Adoptive Parents filed their petition to adopt Child. I.C. § 31-19-5-12(a).[2] It is undisputed that Putative Father did not meet either of these deadlines. Instead, he did not register as a putative father until Child was over three years old and the adoption petition had been pending for eighteen months. As such, the trial court did not err by finding that his consent to the adoption was irrevocably implied.

[10]    Putative Father makes a compelling argument that the purpose of the Putative Father Registry is to ensure that putative fathers have notice if someone is seeking to adopt their child(ren). I.C. § 31-19-5-3. In this case, Putative Father not only had notice, he was an active participant; first, he took the initiative to file a pro se paternity action and then, he actively took part in the adoption

---

[1] A putative father's consent to adoption is also irrevocably implied if he fails to file a motion to contest the adoption within thirty days of service of notice of the adoption. I.C. § 31-19-9-12(1). Here, Putative Father did not file a motion to contest the adoption within that timeframe. He had already, however, filed a petition to establish paternity, which our Supreme Court has held is equivalent to filing a motion to contest the adoption. *In re B.W.*, 908 N.E.2d 586, 592-94 (Ind. 2009). Therefore, Putative Father's consent was not irrevocably implied for this reason.

[2] This statute also includes a provision permitting a putative father to register by the date of the filing of a petition to terminate the parent-child relationship between the child and the child's mother. I.C. § 31-19-5-12(a)(2)(B). Although Putative Father attempts to invoke this provision, arguing that when Mother consented to the adoption her rights were effectively terminated, it is apparent that it does not apply because no petition to terminate was filed in this case. And even if it did, Putative Father did not register until *after* Mother consented to the adoption.

proceedings. Here, therefore, there was no true reason that he had to register. Indeed, it feels as though this outcome is not only nonsensical, but unjust; it feels as though his action of filing the paternity cause should have been enough to preserve his right to object; it feels as though this is the ultimate "gotcha" outcome. In a perfect world, we would reverse. But this world is not perfect, and the statute says what it says, which is that the failure to register in a timely fashion leads to irrevocably implied consent.[3] We are compelled to affirm the trial court given the plain language of the statute at issue.

[11] Next, Putative Father contends that the trial court should not have granted the adoption petition because Adoptive Parents did not submit an affidavit from the State Department of Health stating whether he had registered as a putative father or had filed a petition to establish paternity. Putative Father is correct that such an affidavit is required, *see* I.C. § 31-19-11-1(a)(4), but in this case its omission was harmless. Everyone, including Adoptive Parents and the trial court, was on notice that Putative Father had filed a petition to establish paternity and, in the end, had registered as a putative father. Moreover, Putative Father had actual notice of the adoption and was an active participant in the proceedings. Consequently, any departure from statutory procedure in this regard was harmless.

---

[3] Therefore, the takeaway for practitioners (though we acknowledge that Putative Father instituted his paternity action pro se) is that the best course of action under circumstances similar to these would be to register with the Putative Father Registry contemporaneously with—or even before—the filing of a paternity action.

The judgment of the trial court is affirmed.


Kirsch, J., concurs.
Bradford, J., concurs in result without an opinion.