## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 02 2018, 8:39 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kyle D. Gobel
Crawfordsville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| IN RE: THE ADOPTION OF S.M.S. | August 2, 2018 |
| | Court of Appeals Case No. 18A-AD-517 |
| F.V., | Appeal from the Clinton Circuit Court |
| *Appellant-Respondent,* | |
| v. | The Honorable Bradley K. Mohler, Judge |
| J.S. and A.S., | Trial Court Cause No. 12C01-1708-AD-11 |
| *Appellees-Petitioners.* | |

**Altice, Judge.**

## Case Summary

F.V. (Father) appeals the trial court's grant of an amended petition to adopt the minor child S.M.S. (Child) filed by J.S. and A.S. (Grandfather and Grandmother, respectively – collectively, the Grandparents). Father presents three issues for our review, which we consolidate and restate as follows:

> 1. Whether the trial court erred in concluding that Father impliedly consented to the adoption; and

> 2. Whether the trial court's finding that adoption was in the best interests of Child was clearly erroneous.

We affirm.

## Facts & Procedural History

M.S. (Mother) and Father began a romantic relationship in November 2015, and conceived Child. Father became incarcerated in the Hendricks County Jail from March to August 2016, and, thereafter, was transferred to the Indiana Department of Correction (DOC). Child was born on October 4, 2016, while Father was incarcerated. Father's earliest possible release date is May 2019. Father has never met Child.

On January 26, 2017, Mother and Child moved into the Grandparents' home. Mother moved out in February 2017, leaving Child with the Grandparents.

The Grandparents filed a petition for the adoption of Child on August 14, 2017, and, therewith, Mother's consent to the proposed adoption. The adoption

petition alleged that paternity had not been established for Child by court proceeding or by a paternity affidavit. The Grandparents attached to the petition "[a]n Indiana State Department of Health Putative Father Registry Affidavit, which state[d] that no putative father is registered and no paternity determination is on file [for Child]." *Appellant's Appendix Vol. 2* at 6-7. Father was notified that the petition for adoption had been filed.

[6] On September 1, 2017, Father filed a pro se motion contesting the adoption, alleging that he was Child's biological father and that he did not consent to the adoption.[1] On October 16, 2017, the Grandparents filed an amended adoption petition, alleging (among other things) that, since Child's birth, Father had not paid support; due to lack of communication and support, Father had abandoned Child for longer than six months; Father was "unfit" to parent Child; and Father's consent to the adoption was not required. *Id*. at 24. On December 18, 2017, the Grandparents filed a motion for summary judgment, arguing that because Father failed to file a paternity action and register with the Putative Father Registry within the required time, his consent to the adoption was not required. The Grandparents asked that summary judgment be granted on that issue.

[7] On February 2, 2018, the trial court held a hearing on the adoption petition and the motion for summary judgment. Both Father and the Grandparents

---

[1] On October 26, 2017, the trial court appointed counsel to represent Father.

attended the hearing, following which the trial court issued an order finding that Father's consent to the adoption was irrevocably implied because Father had failed to register with the Putative Father Registry and had failed to file a paternity action.[2] *Id*. at 80. The court concluded that adoption was in Child's best interests and granted the Grandparents' amended petition for adoption.[3] Father now appeals.[4] Additional facts will be provided as necessary.

## Discussion & Decision

[8] When reviewing a trial court's ruling in an adoption proceeding, we will not disturb that ruling unless the evidence leads to but one conclusion and the trial judge reached an opposite conclusion. *Rust v. Lawson*, 714 N.E.2d 769, 771 (Ind. Ct. App. 1999), *trans. denied*. We will not reweigh the evidence but instead will examine the evidence most favorable to the trial court's decision together with reasonable inferences drawn therefrom to determine whether sufficient evidence exists to sustain the decision. *Id*. The decision of the trial court is presumed to be correct, and it is the appellant's burden to overcome that presumption. *Id*. at 772.

---

[2] The court also found "[t]hat for argument's sake, assuming [Father] had complied by registering with the Putative Father Registry and/or had filed a paternity action, his consent is still not required due to his lack of contact with the child and/or his lack of support for the child" per Ind. Code § 31-19-9-8(2).

[3] The trial court did not issue a ruling on the Grandparents' motion for summary judgment.

[4] The Grandparents have not filed an appellees' brief with our court.

[9] When, as in this case, the trial court has made findings of fact and conclusions thereon, we apply a two-tiered standard of review: "we must first determine whether the evidence supports the findings and second, whether the findings support the judgment." *In re Adoption of T.L.*, 4 N.E.3d 658, 662 (Ind. 2014). Factual findings "are clearly erroneous if the record lacks any evidence or reasonable inferences to support them [and] . . . a judgment is clearly erroneous when it is unsupported by the findings of fact and the conclusions relying on those findings." *Id*. (internal quotation omitted).

# 1. Father's Consent

[10] Father first argues that the trial court erred by finding that his consent to the adoption was irrevocably implied because he failed to timely register as a putative father with the Indiana Putative Father Registry. I.C. § 31-19-5-18 governs the waiver of notice rights of unregistered putative fathers. The statute provides as follows: "A putative father who fails to register within the period specified by section 12 of this chapter waives notice of an adoption proceeding. The putative father's waiver under this section constitutes an irrevocably implied consent to the child's adoption." I.C. § 31-19-5-18. I.C. § 31-19-5-12(a) sets forth the time period in which a putative father must register, that is, for our purposes, within thirty days of the child's birth or by the date on which the petition to adopt the child is filed, whichever is later.

"[A] putative father whose consent has been implied may not challenge the adoption or establish paternity." *In re Adoption of J.D.C.*, 751 N.E.2d 747, 750 (Ind. Ct. App. 2001); I.C. §§ 31-19-9-13, –14.

Father concedes that he did not meet either of the deadlines set forth in I.C. § 31-19-5-12(a). However, Father implores us to consider favorably his efforts to contest the adoption. In support of his argument, Father points us to our opinion in *In re Adoption and Paternity of K.A.W.*, 99 N.E.3d 724 (Ind. Ct. App. 2018), where, according to Father, this court "[took] issue with [I.C. §§ 31-19-5-18 and 31-19-5-12(a)]." *Appellant's Brief* at 15. In *K.A.W.*, putative father filed a paternity action. Thereafter, the adoptive parents filed a petition to adopt the child. Putative father timely filed a motion to contest the adoption but failed to timely register as the putative father. The trial court found that putative father's failure to register "'constitute[d] an irrevocably implied consent' to the adoption." *K.A.W.*, 99 N.E.3d at 725. In affirming the trial court's decision, this court explained:

> Putative Father makes a compelling argument that the purpose of the Putative Father Registry is to ensure that putative fathers have notice if someone is seeking to adopt their child(ren). I.C. § 31-19-5-3. In this case, Putative Father not only had notice, he was an active participant; first, he took the initiative to file a pro se paternity action and then, he actively took part in the adoption proceedings. Here, therefore, there was no true reason that he had to register. Indeed, it feels as though this outcome is not only nonsensical, but unjust; it feels as though his action of filing the paternity cause should have been enough to preserve his right to object; it feels as though this is the ultimate "gotcha" outcome. In a perfect world, we would reverse. But this world is not perfect, and the statute says what it says, which is that the failure to register in a timely fashion leads to irrevocably implied

consent.[5] We are compelled to affirm the trial court given the plain language of the statute at issue.

*Id.* at 727.

[12] Here, Father failed to timely register with the Indiana Putative Father Registry. We, like the court in *K.A.W.*, are compelled to affirm the trial court given the plain language of I.C. § 31-19-5-12(a). *See also* I.C. §§ 31-19-9-13, –14 (a putative father whose consent to adoption is implied is not entitled to challenge either the validity of his implied consent or establish paternity). As such, the trial court did not err by finding that Father's consent to the adoption was irrevocably implied.

## 2. Best Interests of Child

[13] Father also challenges the trial court's determination that adoption was in Child's best interests. The primary concern in every adoption proceeding is the best interests of the child. *In re Adoption of M.L.*, 973 N.E.2d 1216, 1224 (Ind. Ct. App. 2012). Even if a court determines that a natural parent's consent is not required for an adoption, the court must still determine whether adoption is in the child's best interests. *See* I.C. § 31-19-11-1(a)(1). "When reviewing the trial court's ruling in an adoption proceeding, we will not disturb that ruling unless

---

[5] We noted the following in footnote 3 in *K.A.W.*: "Therefore, the takeaway for practitioners (though we acknowledge that Putative Father instituted his paternity action pro se) is that the best course of action under circumstances similar to these would be to register with the Putative Father Registry contemporaneously with – or even before – the filing of a paternity action." *K.A.W.*, 99 N.E.3d at 727 n.3.

the evidence leads to but one conclusion and the trial judge reached an opposite conclusion." *T.L.*, 4 N.E.3d at 662.

[14] We note that the adoption statute does not provide guidance for which factors to consider when determining the best interests of a child in an adoption proceeding, but we have noted that there are strong similarities between the adoption statute and the termination of parental rights statute in this respect. *See M.L.*, 973 N.E.2d at 1223 (holding that the adoption statutes and the termination statutes provide similar balances between parental rights and the best interests of the children). In termination cases, we have held that the trial court is required to look to the totality of the evidence to determine the best interests of a child. *In re I.A.*, 903 N.E.2d 146, 155 (Ind. Ct. App. 2009).

[15] In support of his argument that adoption by the Grandparents was not in Child's best interests, Father points us to his testimony at the adoption hearing, specifically that, according to Father, he showed "his efforts to communicate with and support the Child were commensurate with his resources and opportunities while in the DOC";[6] he "contested the proposed adoption and actively participated in the adoption proceedings"; and he "loved [Child] and . . . his goal was to have [Child] in his care." *Appellant's Brief* at 20. Father asks us to also consider his testimony that he "was working on time cuts [to his

---

[6] According to Father, he had "no assets or income with which to provide support for [Child]"; he had "limited assets to use to send letters and make phone calls"; however, he had "used his limited resources to send four letters to the Grandparents' home." *Appellant's Brief* at 20.

sentence in the DOC], and that he hoped to be released . . . close to [Child's] second birthday," as well as testimony that he was "taking DOC substance abuse classes and that he intended to continue working on his sobriety upon his release." *Id*. at 19.

[16] Here, however, we find that our resolution of Father's implied consent issue disposes of Father's best interests challenge. As we stated above, a putative father whose consent has been implied may not challenge the adoption. *J.D.C.*, 751 N.E.2d at 750; I.C. § 31-19-9-13. Thus, under the circumstances of this case, Father simply has no standing to raise the best interests argument.

[17] Even assuming that Father can raise the best interests argument, a review of the record supports the trial court's determination that the Grandparents' adoption of Child was in Child's best interests. Father currently is incarcerated with an earliest possible release date of May 20, 2019. Father was incarcerated prior to Child's birth, and Child has never met Father. Father has no assets. His only source of income is the small amount of money his father deposits monthly into his prison commissary account. Child has lived with the Grandparents since she was approximately three months old, and the Grandparents have provided all the support for Child. Father has had almost no contact with Child. At the adoption hearing, Grandmother testified that Child has bonded with her and Grandfather, and that she and Grandfather are able to provide for Child financially. Grandfather testified that he was mentally, physically, and financially able to care for Child.

[18]     Based upon the totality of the evidence presented during the adoption hearing, we cannot say that the evidence leads only to the opposite conclusion of that reached by the trial court.  We therefore find that the trial court's conclusion that the adoption of Child by the Grandparents was in Child's best interests was not clearly erroneous.

[19]     Judgment affirmed.

Bailey, J. and Brown, J., concur.