

IN THE

# Court of Appeals of Indiana

In re the Adoption of M.J.H. (Minor Child)

S.R.,

*Appellant-Respondent*



FILED

Jun 10 2024, 9:25 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

v.

T.D.,

*Appellee-Petitioner*

June 10, 2024

Court of Appeals Case No.
23A-AD-2769

Appeal from the Hamilton Superior Court

The Honorable David K. Najjar, Judge

The Honorable Erin M. Weaver, Magistrate

Trial Court Cause No.
29D05-2205-AD-657

## Opinion by Judge Mathias

Judges Tavitas and Weissmann concur.

**Mathias, Judge.**

[1] S.R. ("Putative Father") appeals the trial court's grant of T.D.'s ("Adoptive Mother's") petition to adopt M.J.H. ("Child"). Putative Father presents one issue for review, namely, whether the trial court erred when it concluded that his consent to the adoption was irrevocably implied by his failure to register with the putative father registry.

[2] We affirm.

## Facts and Procedural History

[3] On August 20, 2020, M.H. ("Biological Mother")[1] gave birth to Child. Shortly after his birth, Child was found to be a CHINS, and the Department of Child Services ("DCS") placed Child with Adoptive Mother. Child has continuously lived with Adoptive Mother since that time.[2]

[4] Putative Father was incarcerated when Child was born. Putative Father was not married to Biological Mother, and he did not register with the putative father registry. During the CHINS proceeding, Putative Father requested DNA

---

[1] Biological Mother does not participate in this appeal. In September 2023, the trial court found that her consent to the adoption was irrevocably implied.

[2] Adoptive Mother's boyfriend-turned-husband also provided care for Child, but the couple have since divorced.

testing. That testing established that he is Child's biological father in March 2022.

[5] On May 2, Adoptive Mother filed her petition to adopt Child. While Adoptive Mother identified Putative Father as Child's biological father in the petition, she did not serve him with notice of the petition. After learning about the petition, on September 9, Putative Father filed a motion to contest the adoption. On March 14, 2023, more than two years after Child was born, Putative Father filed a petition to establish his paternity of Child.[3]

[6] On April 5, 2023, Adoptive Mother filed a motion to dismiss Putative Father's motion to contest the adoption, and she filed a "Motion to Confirm that Biological Father's Consent is Irrevocably Implied." Appellant's App. Vol. 2, p. 53. Adoptive Mother argued in relevant part that Putative Father's consent to the adoption was irrevocably implied because he had not timely registered with the putative father registry. In his response, Putative Father argued that he was not required to register with the putative father registry and that his consent to the adoption was not, therefore, irrevocably implied.[4]

[7] The trial court found in relevant part that Putative Father "was required to register with the putative father registry pursuant to IC [§] 31-19-5-12 by no later

---

[3] The paternity petition should have been consolidated with the adoption proceedings. *See* I.C. § 31-19-2-14. In any event, Putative Father does not raise any issues in this appeal related to his paternity petition.

[4] We reject Adoptive Mother's assertion that Putative Father has waived this argument. Our review of the record shows that he sufficiently raised this issue to the trial court.

than the filing of a petition for adoption of the child on May 2, 2022." *Id.* at 83. And the court concluded that Putative Father's failure to register meant that his consent to the adoption had been irrevocably implied as a matter of law.

On October 27, the trial court entered the adoption decree. This appeal ensued.[5]

## Overview of the Putative Father Registry

As this Court has explained,

> Indiana established the Registry in 1994. *In re Paternity of G.W.*, 983 N.E.2d 1193, 1196 (Ind. Ct. App. 2013), *reh'g denied*. The Registry is managed by the DOH. Ind. Code § 31-19-5-2. "The purpose of the registry is to provide notice to a putative father that a petition for adoption has been filed." *In re Adoption of J.D.C.*, 751 N.E.2d 747, 749 (Ind. Ct. App. 2001) (citing *In re Paternity of Baby Doe*, 734 N.E.2d 281, 284 (Ind. Ct. App. 2000)); *see also* Ind. Code § 31-19-5-3. The statutory authority governing the Registry
>
> > applies to a putative father whenever (1) an adoption under IC [§] 31-19-2 has been or may be filed regarding a child who may have been conceived by the putative father; and (2) on or before the date the child's mother executes a consent to the child's adoption, the child's mother has not disclosed the name or address, or both, of the putative father to the

---

[5] In her motion to dismiss, Adoptive Mother argues that Putative Father "failed to appeal the Order on Consent" and that the issues he raises on appeal are, therefore, "moot." Motion to Dismiss p. 4. It appears that Adoptive Mother's argument turns on the fact that Putative Father attached only the adoption decree to his notice of appeal and not the court's interlocutory order on his consent. Adoptive Mother acknowledges that Putative Father was required to wait until the decree was entered to file this appeal. And in his brief on appeal, Putative Father explicitly appeals the trial court's order regarding consent. We reject Adoptive Mother's argument and deny her motion to dismiss by separate order.

attorney or agency that is arranging the child's adoption.

Ind. Code § 31-19-5-1(a). However, the statutory authority governing the Registry "does not apply if, on or before the date the child's mother executes a consent to the child's adoption, the child's mother discloses the name and address of the putative father to the attorney or agency that is arranging the child's adoption." Ind. Code § 31-19-5-1(b).

A putative father who registers with the Registry in accordance with Indiana Code chapter 31-19-5 "is entitled to notice of the child's adoption. . . ." Ind. Code § 31-19-5-4. However,

> [i]f, on or before the date the mother of a child executes a consent to the child's adoption, the mother does not disclose to an attorney or agency that:
>
>> (1) is arranging; or
>>
>> (2) may arrange;
>
> an adoption of the child the name or address, or both, of the putative father of the child, the putative father must register under this [Indiana Code chapter 31-19-5] to entitle the putative father to notice of the child's adoption.

Ind. Code § 31-19-5-5 (emphasis added). Further, the filing of a paternity action by a putative father "does not relieve the putative father from the: (1) obligation of registering; or (2) consequences of failing to register; in accordance with [Indiana Code chapter 31-19-5] unless paternity has been established before the filing of the petition for adoption of the child." Ind. Code § 31-19-5-6.

In order to be entitled to notice of an adoption, a putative father must register with the DOH not later than "(1) thirty (30) days

after the child's birth; or (2) the earlier of the date of the filing of a petition for the: (A) child's adoption; or (B) termination of the parent-child relationship between the child and the child's mother; whichever occurs later." Ind. Code § 31-19-5-12(a). A putative father may also register with the DOH prior to the child's birth. Ind. Code § 31-19-5-12(b). "A putative father who fails to register within the period specified by [Indiana Code section 31-19-5-12] waives notice of an adoption proceeding. The putative father's waiver under this section constitutes an irrevocably implied consent to the child's adoption." Ind. Code § 31-19-5-8 (emphasis added). "[A] putative father whose consent has been implied may not challenge the adoption or establish paternity." *In re Adoption of J.D.C.*, 751 N.E.2d at 750; *see also In re Paternity of Baby Doe*, 734 N.E.2d at 285; Indiana Code §§ 31-19-9-13, 31-19-9-14.

*E.S. v. T.B. (In re Adoption of K.G.B.)*, 18 N.E.3d 292, 296-97 (Ind. Ct. App. 2014).

## Discussion and Decision

[10] Putative Father presents an issue of first impression for our courts, namely, whether Indiana Code chapter 31-19-5 ("Chapter 5"), which governs the putative father registry, applies where a mother does not consent to an adoption. Initially, we note that, despite the DNA test showing that Putative Father is Child's biological father, he qualifies as a "putative father" under Indiana Code section 31-9-2-100.

[11] Matters of statutory interpretation are reviewed de novo. *City of New Albany v. Bd. of Comm'rs of Cnty. of Floyd*, 141 N.E.3d 1220, 1223 (Ind. 2020). As our Supreme Court has explained:

When interpreting a statute, we begin by reading its words in their plain and ordinary meaning, taking into account "the structure of the statute as a whole." *ESPN, Inc. v. Univ. of Notre Dame Police Dep't*, 62 N.E.3d 1192, 1195 (Ind. 2016). Mindful of what the statute says and what it doesn't say, we aim to "avoid interpretations that depend on selective reading of individual words that lead to irrational and disharmonizing results." *Id.* (quotation and citation omitted). Rather, we presume the "legislature intended for the statutory language to be applied in a logical manner consistent with the statute's underlying policy and goals." *Rodriguez v. State*, 129 N.E.3d 789, 793 (Ind. 2019) (quotation and citation omitted). Ultimately, "our goal is to determine and give effect to" the legislature's intent. *State v. Int'l Bus. Machines Corp.*, 964 N.E.2d 206, 209 (Ind. 2012) (citation omitted).

*Town of Linden v. Birge*, 204 N.E.3d 229, 237 (Ind. 2023).

[12] Chapter 5 begins with Indiana Code section 31-19-5-1, which provides:

(a) This chapter applies to a putative father whenever:

(1) an adoption under IC 31-19-2 has been or may be filed regarding a child who may have been conceived by the putative father; *and*

(2) *on or before the date the child's mother executes a consent to the child's adoption*, the child's mother has not disclosed the name or address, or both, of the putative father to the attorney or agency that is arranging the child's adoption.

(b) This chapter does not apply if, on or before the date the child's mother executes a consent to the child's adoption, the child's mother discloses the name and address of the putative

father to the attorney or agency that is arranging the child's adoption.

(Emphases added.) Putative Father argues that the statute is written such that it "plainly requires the child's mother to *have executed* a consent to the child's adoption," and, otherwise, the chapter does not apply. Appellant's Br. at 12 (emphasis added). We do not agree.

[13] Putative Father's argument ignores the plain language of Indiana Code section 31-19-5-1: a putative father is subject to Chapter 5 "*on or before*" a mother consents to an adoption. (Emphasis added.) The date of a mother's consent is only relevant to the issue of whether she provides a putative father's name and/or contact information to an agency or an attorney prior to the entry of the adoption decree, which, in turn, determines whether Chapter 5 applies to him. There is no statutory requirement under Chapter 5 or elsewhere in the adoption statutes that a mother give her consent *before* a putative father is required to register with the putative father registry. Rather, the applicable statutes very clearly establish that, unless and until Indiana Code section 31-19-5-1(b) applies, a putative father is required to register.

[14] Indiana Code section 31-19-5-12 imposes a deadline for registration with the putative father registry. That deadline does not refer to a requirement that the mother give her "consent" to an adoption. Rather, the deadline for registration is not later than "(1) thirty (30) days after the child's birth; or (2) the earlier of the date of the filing of a petition for the: (A) child's adoption; or (B) termination of the parent-child relationship between the child and the child's

mother; whichever occurs later." I.C. § 31-19-5-12(a). The "termination" of a mother's parental rights can be either voluntary (with her consent) or involuntary (without her consent). *Id.* If, as Putative Father contends, Chapter 5 *only* applies where a mother consents to an adoption, section 12(a) would not refer only to the termination of a mother's rights.

[15] Here, as the trial court found, and consistent with the statute cited above, the deadline for Putative Father's registration was May 2, 2022, when Adoptive Mother filed her adoption petition. In contrast, there was no deadline for Biological Mother to give her consent to the adoption prior to the entry of the adoption decree.[6] And as of May 2, 2022, Biological Mother might still have executed her consent prior to the entry of the final decree on October 27, 2023. Indeed, it was not until September 19, 2023, that the trial court determined that her consent to the adoption had been irrevocably implied.

[16] In sum, unless he is exempt from registering under Indiana Code section 31-19-5-1(b),[7] Chapter 5 explicitly applies to a putative father before a mother's consent is or may be executed. The relevance of a mother's execution of consent to an adoption is merely the timing for her to provide information about a putative father. And whether her consent is ultimately given or not,

---

[6] Indiana Code section 31-19-9-2 provides that a consent to adoption "may be executed or acknowledged at any time after the birth of the child."

[7] We note that Putative Father argued to the trial court that he was exempt from the registry under subsection (b), but he does not make that argument on appeal.

unless Indiana Code section 31-19-5-1(b) is satisfied, a putative father is required to timely register with the putative father registry under section 31-19-5-12.

[17] This interpretation of Indiana Code section 31-19-5-1 is consistent with the underlying policy and goals of the putative father registry, which were explained by our Supreme Court as follows:

> The Registry serves in part to preserve a father's right to oppose an adoption *while simultaneously assuring the biological mother and adoptive parents that, when a putative father fails to register after a set time, an adoption can proceed without apprehension that it might later be upended*. Many state putative father registry laws were direct legislative responses to the circumstances surrounding the well-publicized "Baby Jessica" and "Baby Richard" cases. *See* Mary Beck, *Toward a National Putative Father Registry Database*, 25 Harv. J.L. & Pub. Pol'y 1031, 1036 (2002); *see generally* Andrew S. Rosenman, Note, *Babies Jessica, Richard, and Emily: The Need for Legislative Reform of Adoption Laws*, 70 Chi.-Kent L. Rev. 1851 (1995). . . .

*In re B.W.*, 908 N.E.2d 586, 587 n.3 (Ind. 2009) (emphasis added). Clearly, requiring putative fathers to register both where a mother consents and where her rights are involuntarily terminated furthers the goal of finality in adoptions.

[18] Still, Putative Father argues that, because Adoptive Mother named him as the biological father in her adoption petition, the purpose of the putative father registry statutes was fulfilled despite his failure to register. But Putative Father conflates notice to him with statutory consent, which our Court has flatly rejected before. In *J.R.C. v. J.C. (In re Adoption of K.A.W.)*, we explained that

Putative Father makes a compelling argument that the purpose of the Putative Father Registry is to ensure that putative fathers have notice if someone is seeking to adopt their child(ren). I.C. § 31-19-5-3. In this case, Putative Father not only had notice, he was an active participant; first, he took the initiative to file a pro se paternity action and then, he actively took part in the adoption proceedings. *Here, therefore, there was no true reason that he had to register*. Indeed, it feels as though this outcome is not only nonsensical, but unjust; it feels as though his action of filing the paternity cause should have been enough to preserve his right to object; it feels as though this is the ultimate "gotcha" outcome. In a perfect world, we would reverse. But this world is not perfect, and the statute says what it says, which is that the failure to register in a timely fashion leads to irrevocably implied consent.[] We are compelled to affirm the trial court[']s order finding that his consent to the adoption was irrevocably implied] given the plain language of the statute at issue.

99 N.E.3d 724, 727 (Ind. Ct. App. 2018) (emphasis added).

[19] Likewise, here, as the trial court found, Putative Father was required to register with the putative father registry by May 2, 2022, when the adoption petition was filed, at the latest. I.C. § 31-19-5-12(a). And Indiana Code section 31-19-5-18 provides that "[a] putative father who fails to register within the period specified by section 12 of this chapter waives notice of an adoption proceeding. *The putative father's waiver under this section constitutes an irrevocably implied consent to the child's adoption.*" (Emphasis added.) In this case, Putative Father had approxiately one year and ten months after the birth of his child to register, but he did not.

Putative Father never registered with the putative father registry. Accordingly, the trial court did not err when it concluded that Putative Father's consent to the adoption was irrevocably implied and granted the adoption petition.

Affirmed.

Tavitas, J., and Weissmann, J., concur.

ATTORNEY FOR APPELLANT

Dyllan M. Kemp
Dollard Whalin LLP
Noblesville, Indiana

ATTORNEY FOR APPELLEE

Paul R. Sadler
Emswiller, Williams, Noland & Clarke, LLC
Indianapolis, Indiana